# United States Court of Appeals for the Federal Circuit

05-3015

TIMOTHY P. McCOLLUM,

Petitioner,

v.

NATIONAL CREDIT UNION ADMINISTRATION,

Respondent.

Timothy P. McCollum, of Alpharetta, Georgia, pro se.

Lauren S. Moore, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director and Mark A. Melnick, Assistant Director. Of counsel was David R. Feniger, Attorney.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

05-3015

TIMOTHY P. McCOLLUM,

Petitioner,

v.

NATIONAL CREDIT UNION ADMINISTRATION,

Respondent.

_____

DECIDED: August 3, 2005

_____

Before MICHEL, Chief Judge, RADER and LINN, Circuit Judges.

LINN, Circuit Judge.

Timothy P. McCollum ("McCollum") petitions for review of the Merit Systems Protection Board's ("Board") final decisions denying his request for corrective action based on alleged retaliation for whistleblowing and affirming his removal for refusing a directed reassignment. McCollum v. Nat'l Credit Union Admin., No. AT-1221-02-0575-W-1 (M.S.P.B. Dec. 31, 2002) (opinion denying request for corrective action); McCollum v. Nat'l Credit Union Admin., No. AT-0752-02-0569-I-1 (M.S.P.B. Dec. 31, 2002) (opinion affirming removal). Because the Board's decision affirming his removal was not in accordance with law, we reverse that decision. Additionally, because the Board erred in concluding that a refusal to permit an employee to remain in work duty status pending a removal was not a personnel action within the meaning of 5 U.S.C.

§ 2302(a)(2)(A), we reverse that determination and remand for additional proceedings consistent with this opinion.

## I. BACKGROUND

The National Credit Union Administration ("NCUA") is a federal agency tasked with regulating much of the credit union industry. NCUA is governed by a three-person Board ("NCUA Board"), whose members for the time period relevant to this appeal were Norman D'Amours, Yolanda Wheat, and Dennis Dollar. NCUA is also managed by an Executive Director, who for the time period relevant to this appeal was Carolyn Jordan. Although the NCUA Board and its main management staff are located in Alexandria, Virginia, NCUA acts primarily through its six regional offices, two of which are located in Atlanta, Georgia and Concord, California. Each regional office is run by a Regional Director. The Regional Director reports to the NCUA Board through two Associate Regional Directors, an Associate Regional Director of Operations ("ARDO") and an Associate Regional Director of Programs ("ARDP"). All Regional Directors and Associate Regional Directors hold Senior Staff Positions. For the time period relevant to this appeal, the NCUA Board retained all authority for making personnel decisions regarding Senior Staff Positions. From 1999 until his removal, McCollum held the position of ARDO in the Atlanta office of the NCUA.

In 1997, the Office of Personnel Management discovered an illegal hiring scheme conducted by NCUA during 1996 and 1997. The subsequent investigations by the Office of Personnel Management and the Office of Special Counsel led to a number of personnel actions against various employees. On July 29, 1998, while the investigations were ongoing, McCollum wrote a letter to an investigator for the Office of

Special Counsel. In that letter, McCollum stated his belief that certain NCUA Board members were involved in the illegal hiring scheme and were attempting to blame him and other career executives. On September 19, 1999, McCollum made a hotline complaint call to the NCUA Office of Inspector General alleging that his supervisor was giving race-based promotions and pay raises. As part of the subsequent investigation, McCollum alleged that Executive Director Jordan and NCUA Board member Wheat may have had something to do with the allegedly improper promotions and pay raises. The Office of Inspector General concluded that McCollum's hotline complaint was "unsubstantiated" out of three possible categories: "disproved," "unsubstantiated," and "substantiated."

On March 16, 2000, the NCUA Board reassigned a number of Senior Staff Position personnel implicated in the illegal hiring scheme investigations. As a result, the ARDP position in Concord, California was vacant. In June 2000, the Board, on Executive Director Jordan's recommendation, directed McCollum to be reassigned to that position. Executive Director Jordan testified that McCollum was selected because he was one of two people who had not been moved in over ten years and because he was very experienced, having had a number of jobs within NCUA. NCUA initially notified McCollum by letter of his directed reassignment on June 8, 2000. That letter contained the following language:

> Should it become necessary to initiate a termination action for your failure to report as directed or for your declination of this reassignment, you will be notified in writing in accordance with Federal regulations. If you are involuntarily separated or if you choose to resign rather than accept the offered position, you may be eligible to receive severance pay or you may be eligible for discontinued service retirement.

On July 7, 2000, McCollum notified Executive Director Jordan that he accepted the reassignment conditioned on a favorable decision on his request for reconsideration or accommodation. McCollum's request for accommodation involved his twenty-four-year-old daughter who had cerebral palsy and who was part of a group for high-functioning mentally-handicapped people in Atlanta. McCollum requested that NCUA extend the time during which he could choose discontinued service retirement until June 30, 2001 to give him an opportunity to see whether his daughter could successfully live by herself in Atlanta within her group or whether McCollum would have to stay in Atlanta to care for her and accept removal from his position at NCUA. McCollum also requested that he be detailed to California during this period and that NCUA cover his expenses for flying back to Atlanta every other weekend. However, McCollum made clear that he was open to other options.

Upon Executive Director Jordan's recommendation, on August 15, 2000, the NCUA Board rejected McCollum's request for accommodation. McCollum was notified of the NCUA Board's decision by letter of August 22, 2000. That letter also indicated that McCollum may be eligible for discontinued service retirement if he declined the reassignment and was involuntarily separated from service. He received the letter on August 29, 2000 and replied that same day. In his reply, he reiterated his willingness to accept any reasonable accommodation including a shorter term detail. He also noted his willingness to discuss these options. Executive Director Jordan responded on September 5, 2000, informing McCollum that the NCUA Board had considered his request and denied it. Jordan instructed McCollum to accept or decline the reassignment by September 7, 2000. On September 7, 2000, McCollum declined the

reassignment and requested discontinued service retirement, but he noted that he would continue to be available for work until his retirement became effective. McCollum's letter stated the following:

> In light of the NCUA Board's decision rejecting my request for accommodation, my wife and I have concluded that we cannot adequately fulfill our family obligations if I continue work at NCUA under the conditions you require. I therefore must decline your reassignment offer and hereby request discontinued service retirement.

Soon after McCollum's request for discontinued service retirement, McCollum received a call from Executive Director Jordan's deputy, Sherry Turpenoff, notifying him that Jordan wanted him removed from NCUA by September 10, 2000. McCollum informed Turpenoff that it would take longer than three days to process his removal and requested that he be allowed to work in either Atlanta or California during that period. Executive Director Jordan rejected his request on the basis that NCUA did not have work for him in Atlanta or California and required McCollum to use his annual leave during the removal processing period.

On September 26, 2000, NCUA issued a letter to McCollum notifying him of his proposed removal. The letter stated, "Because you had been in Region III for over 10 years and had served as both an ARDO and ARDP, as well as Acting Regional Director, you were the best candidate to bring the needed stability and experience to this position in Region VI." On October 4, 2000, McCollum responded to NCUA's letter reiterating his willingness to accept any accommodation, his continued interest in serving in the California position, and his desire to continue working during the removal processing period. Although NCUA's letter specifically provided ten days for McCollum to respond, neither Executive Director Jordan nor any of the NCUA Board members could recall having seen his response. On October 12, 2000, McCollum received a letter from

NCUA notifying him that it had processed his discontinued service retirement and had forwarded his paperwork to the Office of Personnel Management.

McCollum initially filed a complaint with the Office of Special Counsel claiming that he had been removed in retaliation for whistleblowing. In May 2002, however, McCollum appealed to the Board. The Administrative Judge ("AJ") divided McCollum's appeal into two cases. The first case covered McCollum's Whistleblower Protection Act claims, and the second case covered his adverse action claim for removal. With respect to his Whistleblower Protection Act claims, the AJ found that McCollum made protected disclosures under the Whistleblower Protection Act in 1998 and 1999. McCollum v. Nat'l Credit Union Admin., No. AT-1221-02-0575-W-1, slip op. at 5-8 (M.S.P.B. Dec. 31, 2002) ("WPA Opinion"). The AJ found that McCollum only established a personnel action under the Whistleblower Protection Act with respect to his lowered point score on his performance appraisal. Id. at 14. She also found that McCollum's protected disclosure in 1999 was a contributing factor to his removal but concluded that NCUA had proved by clear and convincing evidence that it would have given McCollum the same performance appraisal even if he had not made the disclosures. Id. at 16-17. The AJ refused to consider McCollum's claims based on NCUA's failure to accommodate him and NCUA's failure to allow him to continue on work duty status while his removal was being processed.

With respect to his adverse action claims, the AJ found that NCUA proved by a preponderance of the evidence that its reasons for reassigning McCollum were legitimate, that he was given adequate notice of the reassignment decision, and that he refused to accept the reassignment. McCollum v. Nat'l Credit Union Admin., No. AT-

0752-02-0569-I-1, slip op. at 10-11 (M.S.P.B. Dec. 31, 2002) ("Removal Opinion"). In considering his claim that his removal constituted improper retaliation under the Whistleblower Protection Act, the AJ concluded that "[n]either the Board members nor Ms. Jordan had any apparent motive to retaliate against the appellant." Id. at 21. The AJ found that although there was some evidence that NCUA made accommodations for others who received directed reassignments, its reasons for not doing so in this case were legitimate. Based on the evidence of NCUA's reasons for reassigning McCollum and the lack of "apparent motive to retaliate," the AJ concluded that NCUA proved by clear and convincing evidence that it would have removed McCollum even if he had not made the protected disclosures. Id.

McCollum petitioned the Board for review of the AJ's decisions. On September 30, 2004, the Board issued an order stating that the two Board members, Chairman McPhie and Member Marshall, could not agree on a disposition. As a result, the AJ's decisions became the final decisions of the Board. McCollum v. Nat'l Credit Union Admin., No. AT-0752-02-0569-I-1, slip op. at 1-2 (M.S.P.B. Sept. 30, 2004). Both Board members wrote separate opinions. Chairman McPhie disagreed with the AJ's analysis of McCollum's claims as a removal for refusing a directed reassignment. Id., slip op. at 7 (separate opinion of Chairman McPhie). He instead would have found that McCollum was challenging an involuntary retirement. Chairman McPhie also would have held that NCUA's refusal to accommodate McCollum and its requirement that he take leave while his retirement was being processed constituted personnel actions under the Whistleblower Protection Act and would remand for adjudication of those claims. Id. at 13-14. Member Marshall agreed with the AJ's characterization of McCollum's case as

an appeal of a removal and would have found that McCollum waived any right to challenge the AJ's failure to consider NCUA's refusal to accommodate and requirement that McCollum use leave time while processing his removal. Id. at 1-3 (separate opinion of Member Marshall).

McCollum timely petitioned for review with this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

### A. Standard of Review

This court must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). The Board's interpretation of a statute is reviewed de novo. Watson v. Dep't of Justice, 64 F.3d 1524, 1528 (Fed. Cir. 1995). The Board's fact findings are reviewed for substantial evidence. See Pyles v. Merit Sys. Prot. Bd., 45 F.3d 411, 414 (Fed. Cir. 1995).

### B. Analysis

#### 1. Voluntary Retirement

The Board's jurisdiction in this case depends on whether McCollum was removed. See Staats v. United States Postal Serv., 99 F.3d 1120, 1123-24 (Fed. Cir. 1996) ("A decision to resign or retire is presumed to be voluntary, and an employee who voluntarily retires has no right to appeal to the Board . . . ."). Thus, we first consider whether the facts indicate that McCollum voluntarily retired. In his letter of September 7, 2000, McCollum declined the reassignment and requested discontinued service

retirement. His letter was neither a resignation nor a request for voluntary retirement. It is important to note that discontinued service retirement cannot simply be requested. Under 5 U.S.C. § 8336(d)(1), discontinued service retirement requires an involuntary separation from service. McCollum's letter merely acknowledged, as NCUA had twice warned McCollum, that NCUA would remove him if he failed to accept the directed reassignment.

In fact, that was exactly NCUA's response. Nineteen days later, on September 26, 2000, NCUA issued a notice of proposed removal. That letter states: "On September 7, 2000, you advised the Board that you would not accept this reassignment. Therefore, because you have declined this directed reassignment, removal is necessary for the efficiency of the service. This action is being taken under 5 CFR, part 752." NCUA did not view McCollum as having resigned or voluntarily retired. McCollum responded by noting that he presumed the notice of removal was necessary to effect discontinued service retirement as he was previously told by NCUA. Nevertheless, he complains about the reference to "adverse action" under 5 C.F.R. part 752 and says that is not what is occurring. McCollum, however, misunderstood the law on this point because his removal was an adverse action. Moreover, McCollum's response letter continues to seek "*any* means by which [he] can accept the ARDP position in Region VI." Thus, McCollum's use of such language makes clear that he did not resign or voluntarily retire.

The Administrative Judge found that McCollum was removed. She stated, "In order for the appellant to receive a discontinued service retirement, which he died [sic],

5 U.S.C. § 8336(d) requires an involuntary separation not for cause based on charges of delinquency or misconduct." This finding is supported by substantial evidence.

## 2. Adverse Action Claim

Initially, McCollum argues that the Board's decision affirming his removal is not in accordance with law. Based on the fact that the NCUA Board was the only entity with authority to remove him, he raises four arguments that he believes make his removal unlawful:

> (1) no authorized agent of the NCUA Board ever directed issuance of the proposal to remove [him]; (2) neither the [NCUA] Board nor any other employee authorized to do so ever considered [his] answer to that proposal; (3) *no one* at NCUA, whether authorized or not, ever rendered a final decision on [his] removal; and (4) no one ever notified [him] of [his] appeal rights.

McCollum relies on Hamilton v. United States Postal Service, 58 M.S.P.R. 486 (1993), and Munson v. Merit Systems Protection Board, 318 F.3d 1358 (Fed. Cir. 2003), for the proposition that a removal may be unlawful per se where the agency itself fails to act to remove the petitioner.

NCUA responds that McCollum requested and was granted discontinued service retirement. In NCUA's view, this amounts to an involuntary resignation, which is considered a constructive removal and is reviewable by the Board. Thus, NCUA argues that even though the NCUA Board did not vote to remove McCollum and did not give him notice of his appeal rights, McCollum cannot show harmful error because he was allowed to appeal his "constructive removal." NCUA argues that Hamilton is inapposite because in this case NCUA reassigned McCollum and "effected" his removal when he rejected that reassignment.

Because McCollum and NCUA disagree as to the appropriate standard of review before the Board regarding McCollum's removal, we first address this issue. In Hamilton, the Board held that an employee's demotion was not in accordance with law because the deciding official signed the final agency demotion decision four days after she retired from the agency. 58 M.S.P.R. at 487-88. In reaching that decision, the Board said, "An appealable action is unlawful in its entirety if there is no legal authority for it, and the Board will reverse it as 'not in accordance with law,' even if minimum constitutional due process was afforded to the appellant and he has not shown harmful error . . . ." Id. at 488. The Board noted that 5 U.S.C. § 7513 only authorizes the agency to take an adverse action against an employee. Id. Because the agency itself did not take the action, the Board held the action to be ultra vires. In Handy v. United States Postal Service, 754 F.2d 335 (Fed. Cir. 1985), this court acknowledged that there is some tension in the Board's jurisdictional statute between the "harmful error" and "not in accordance with law" standards of review. In that case, we held that a decision may be in accordance with law even though a statutory right has been erroneously denied. We noted that 5 U.S.C. § 7701(c)(2) provides for overturning an agency decision where the employee "'(A) shows harmful error in the application of the agency's procedures in arriving at such decision . . . [or] (C) shows that the decision was not in accordance with law.'" Id. at 337 (quoting 5 U.S.C. § 7701(c)(2) (1982)). In agreeing with the Board's reconciliation of these provisions, we said:

> We would add only that paragraphs (A) and (C) are not directed to the same end. Harmful error in procedures (paragraph A) raises the question: Did the wrongful procedure harm the employee in the presentation of his defense so that a different result might have been reached? Paragraph (C), on the other hand, is directed to the decision itself. Was the decision in its entirety in accordance with law?

Id. at 337-38 (footnote omitted).  Where the decision itself is not in accordance with law, there is no need to show harmful error, as the Board held in Hamilton.  58 M.S.P.R. at 488.  Because McCollum is challenging the removal decision itself, the appropriate standard of review before the Board is whether that decision was in accordance with law.

McCollum argues that because the NCUA Board was the only entity within NCUA with authority to remove him but never acted to remove him, his "de facto" removal is not in accordance with law.  We agree.  NCUA concedes that no one at NCUA other than the NCUA Board had authority to remove McCollum.  Both Dennis Dollar and Yolanda Wheat, NCUA Board members, testified at the hearing on behalf of NCUA that only the NCUA Board had authority to remove someone in a Senior Staff Position, which included McCollum.  Trial Tr. at 9-10, 81-83 (Oct. 28, 2002).  Similarly, NCUA concedes that the NCUA Board did not in fact remove McCollum.  At the hearing, NCUA's attorney said, "Well, Your Honor, the other thing is is [sic] that we didn't—we weren't . . . we weren't removing him.  He asked for retirement."  Trial Tr. at 54 (Oct. 29, 2002).

The AJ found that because McCollum's discontinued service retirement was not available under 5 U.S.C. § 8336(d) unless he was removed, "the agency's separation was a de facto removal."  McCollum v. Nat'l Credit Union Admin., No. AT-0752-02-0569-I-1, slip op. at 1-2 (July 15, 2002).  She was correct in that McCollum was in fact removed from his position at NCUA, but she never expressly addressed McCollum's contention that his removal was not in accordance with law.  The mere fact that McCollum was granted discontinued service retirement, which is unavailable absent

removal, does not change the fact that the agency itself, according to its own authority structure, never removed McCollum. Nor does the fact that NCUA "effected" McCollum's removal make it in accordance with law. As the Board noted in Hamilton, under 5 U.S.C. § 7513, only the agency may take action against an employee. Where the agency has not acted, an employee's removal cannot be in accordance with law. The fact that NCUA has not removed McCollum is not a mere procedural defect. Instead, the removal decision itself does not exist. Because NCUA did not remove McCollum, his removal was not in accordance with law. McCollum is entitled to be placed as nearly as possible in the status quo ante. Kerr v. Nat'l Endowment for the Arts, 726 F.2d 730, 733 & n.3 (Fed. Cir. 1984).

### 3. Whistleblower Protection Act Claims

McCollum additionally raises three issues before this court from his Whistleblower Protection Act claims. McCollum argues that the Board's finding that NCUA had shown by clear and convincing evidence that it would have removed him in the absence of his protected disclosures is not supported by substantial evidence. Because the remedy that McCollum seeks based on this claim is the same as the remedy already granted on his claim that his removal was not in accordance with law—i.e., return to the position he would have been in had the act complained of not occurred—we need not decide this issue. McCollum also argues that the Board misinterpreted 5 U.S.C. § 2302(a)(2)(A) in holding that NCUA's refusal to provide an accommodation with respect to his directed reassignment and NCUA's refusal to allow him to remain in work status while his removal was being processed were not personnel actions. With respect to his claim regarding accommodation, even if he prevailed,

McCollum would be entitled to at most a return to his position prior to the retaliatory action. Given that we have already granted that relief with respect to his adverse action claim, we need not reach this issue. However, his claim that he was improperly required to use annual leave instead of being allowed to remain in work duty status would entitle him to restoration of the leave used during the period when his removal was being processed.

McCollum argues that NCUA's requirement that he use annual leave instead of remaining in work duty status constitutes a personnel action within the meaning of 5 U.S.C. § 2302(a)(2)(A)(ix) because it is a decision concerning pay or benefits. NCUA argues that McCollum waived this argument by not objecting to the AJ's order precluding this issue from consideration at the hearing. NCUA further argues that McCollum's contention is without merit because the Board found that NCUA Board officials had no reason to retaliate and that they did not retaliate against McCollum. Finally, NCUA argues that McCollum has failed to establish a nexus between the denial and his protected disclosures. We agree with McCollum that refusing to allow an employee whose removal has been proposed to remain in work duty status, as is required by 5 C.F.R. § 752.404(b)(3), is a personnel action under section 2302(a)(2)(A)(ix) because it is a decision concerning pay and/or benefits. NCUA's arguments do not address the merits of this determination and are without merit in any event.

First, NCUA is incorrect that McCollum waived the issue. NCUA admits that McCollum raised this issue and that it was ruled upon by the AJ at the July 10, 2002 status conference. No more is required to preserve an issue for appeal. Wallace v.

Dep't of the Air Force, 879 F.2d 829, 832 (Fed. Cir. 1989) (stating that "the issue must be raised with sufficient specificity and clarity that the tribunal is aware that it must decide the issue, and in sufficient time that the agency can do so").

Second, whether the NCUA Board members had a motive to retaliate is irrelevant since McCollum does not have to show a motive to retaliate. Marano v. Dep't of Justice, 2 F.3d 1137, 1141 (Fed. Cir. 1993) ("It is thus evident in light of the WPA's modifications to the CSRA that though evidence of a retaliatory motive would still suffice to establish a violation of his rights under the WPA, a whistleblower *need not* demonstrate the existence of a retaliatory motive on the part of the employee taking the alleged prohibited personnel action in order to establish that his disclosure was a contributing factor to the personnel action . . . ." (citation omitted)). Moreover, there was no evidence that the NCUA Board had any role in the decision to remove McCollum from work duty status after he refused the directed reassignment. The evidence at the hearing indicated that Executive Director Jordan was the driving force behind that decision.

Finally, NCUA's argument that McCollum has failed to show a nexus between the denial of his request to remain in work duty status and his protected disclosures is particularly unconvincing, given that the AJ precluded McCollum from pursuing the issue at the hearing. Thus, we reverse the Board's determination that a denial of work duty status while a removal is pending is not a personnel action under 5 U.S.C. § 2302(a)(2)(A) and remand this issue to the Board for adjudication of McCollum's claim in the first instance.

Because on remand, the Board is likely to rely on its prior findings regarding McCollum's Whistleblower Protection Act claims, we address one of those findings that will be pertinent to the remand issue and that McCollum has challenged before this court. Although the AJ found that "[n]either the Board members nor Ms. Jordan had any apparent motive to retaliate against the appellant," Removal Opinion at 21, that finding is not supported by substantial evidence. The AJ's stated rationale was that the protected disclosure naming Jordan and NCUA Board member Wheat as possible participants in prohibited personnel practices was found by the Inspector General to be unsubstantiated. Id. It is unclear why the fact that McCollum's accusation was found to be unsubstantiated, which is in the middle of three possible findings, the other two being disproved and substantiated, would nullify any motive to retaliate based on the accusation. Although Jordan testified that she did not remember seeing the Inspector General's report on McCollum's accusation, Trial Tr. at 207 (Oct. 28, 2002), both Dollar and Wheat, the two NCUA Board members who testified at the hearing, testified that they read the report and remembered it. Id. at 34, 99. In fact, Dollar testified that he gives "serious consideration to any IG report" and "always take[s] their recommendations and their findings very seriously." Id. at 34. Given the NCUA Board's serious consideration of such a report, Jordan's testimony that she could not remember it and "may or may not have looked at it," id. at 207, is at least suspect, especially where it named her personally as possibly being involved in prohibited personnel practices. In any event, the AJ did not expressly rely on her credibility nor cite her testimony as a basis for the lack of motive to retaliate. See Larson v. Dep't of the Army, 260 F.3d 1350, 1355 (Fed. Cir. 2001) (overturning AJ's fact finding where the AJ did not make

findings with respect to the credibility of witnesses nor even mention the testimony in his decision).  Thus, the evidence adduced at the hearing indicates that Jordan possessed at least some motive to retaliate.

## III.  CONCLUSION

Because McCollum's removal was not in accordance with law, the Board's affirmance of his removal is also not in accordance with law and must be reversed.  As a result, McCollum is entitled to be returned to a position as nearly as possible to that occupied prior to his removal.  Additionally, because the Board erred in concluding that denying an employee work duty status pending a removal was not a personnel action within the meaning of 5 U.S.C. § 2302(a)(2)(A), we reverse that determination and remand for adjudication of McCollum's Whistleblower Protection Act claim based thereon in a manner consistent with this opinion.

## REVERSED AND REMANDED