# United States Court of Appeals for the Federal Circuit

---

**ERIC CERWONKA,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2018-1398

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-17-0264-I-1.

---

Decided: February 13, 2019

---

L. LANE ROY, Brown Sims, PC, Lafayette, LA, argued for petitioner.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM, JOSEPH H. HUNT.

---

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Eric R. Cerwonka ("Cerwonka") seeks review of the Merit Systems Protection Board ("the Board") decision affirming the Department of Veterans Affairs decision to remove him from his position as a clinical psychologist. *Cerwonka v. Dep't of Veterans Affairs*, No. DA-0752-17-0264-I-1, 2017 MSPB LEXIS 4334 (M.S.P.B. Oct. 10, 2017) ("*Decision on Appeal*"). Because Cerwonka's removal complied with 38 U.S.C. § 7402(f), we affirm.

I. Background

A. Cerwonka's License Revocation and Removal

Prior to his removal, Cerwonka was employed as a clinical psychologist for the Department of Veterans Affairs ("DVA" or "the agency") office in Alexandria, Louisiana. *Id.* at *1. He was licensed to practice psychology in both Louisiana and New York. *Id.* at *7. During the relevant time period, Cerwonka worked as a full-time psychologist for the Veterans Health Administration ("VHA") at the Alexandria Veterans Administration Health Care System, maintained a private practice, and evaluated social security disability applicants for the Social Security Administration.

An administrative complaint was filed against Cerwonka with the Louisiana State Board of Examiners of Psychologists ("LSBEP"). After conducting an investigation, the LSBEP held a two-day hearing in January 2017. On February 10, 2017, the LSBEP revoked Cerwonka's license to practice psychology in the State of Louisiana for cause. *Id.* at *6–7. The LSBEP found that Cerwonka engaged in "clear ethical violations" and repeatedly failed to follow the rules and regulations binding upon him as a psychologist. *Id.* at *7.

By letter dated February 24, 2017, Dr. Harlan "Mark" Guidry, Chief of Staff at the Alexandria Veterans Administration Health Care System, proposed to remove Cerwonka for failure to maintain a current license. *Id.* at *3–

4. As grounds for the proposed removal, Guidry cited 38 U.S.C. § 7402(f)—which provides that a person may not be employed as a psychologist with the VHA if his license has been terminated for cause—and the LSBEP's license revocation. In the letter, Guidry informed Cerwonka that he had the right to respond to the charge against him and to submit evidence showing why the charge was unfounded. *Id*. at \*4. Cerwonka did not respond to the notice of proposed removal.

On March 22, 2017, the deciding official—Medical Center Director Peter C. Dancy, Jr.—sustained the charge of failure to maintain a current license. *Id*. In his decision, Dancy considered several factors regarding the appropriate penalty and "concluded that the sustained charges against [Cerwonka] are of such gravity that mitigation of the proposed penalty is not warranted, and that the penalty of removal is appropriate and within the range of reasonableness." Resp't App. 46. Dancy informed Cerwonka that he would be removed from employment at the Alexandria Veterans Administration Health Care System effective April 1, 2017. Cerwonka timely appealed his removal to the Board on March 30, 2017.

## B. Cerwonka's License Revocation Appeal

Cerwonka sought review of the LSBEP's license revocation decision by filing a petition with a district court in Louisiana. *In re Cerwonka*, 249 So. 3d 30, 31 (La. App. 1 Cir. 2018). Therein, Cerwonka asserted due process violations and argued that there was insufficient evidence supporting his license revocation. *Id*. at 31–32. In May 2017—almost three months after Cerwonka's license was revoked and one month after he was removed from DVA—the Louisiana district court judge reinstated Cerwonka's license,

pending further proceedings. Resp't App. 43.[1] In July 2017, the Louisiana district court judge vacated the LSBEP's revocation decision "due to the fact that the hearing below violated the Constitutional rights of Dr. Cerwonka." *Id.* at 40. The court explained that, if the LSBEP prosecutes Cerwonka again for the same issues, "it shall not use a [LSBEP] attorney and Administrative Law Judge or prosecuting attorney from the prior hearing of this matter." *Id.*

The LSBEP appealed the district court's decision to the Louisiana First Circuit Court of Appeal. In a decision dated April 11, 2018, that court found that Cerwonka's alleged conflicts of interest did not constitute due process violations and that the LSBEP did not violate Cerwonka's constitutional rights. *In re Cerwonka*, 249 So. 3d at 35–38. The court reversed the district court's decision and remanded the matter for further proceedings. In September 2018, the Supreme Court of Louisiana denied Cerwonka's petition for writ of certiorari. *In re Cerwonka*, No. 2018-C-0760, 2018 La. LEXIS 2255, at *1 (La. Sept. 21, 2018). Accordingly, proceedings regarding the merits of the LSBEP's license revocation remain pending.

### C.  Cerwonka's Removal Appeal to the Board

At the same time Cerwonka was pursuing his license revocation appeal in the Louisiana district court, he and the agency were litigating his removal before the Board. Both parties submitted their respective prehearing submissions to the Board in August 2017. For his part, Cerwonka argued that he was removed in retaliation for filing

---

[1]    Counsel for both parties explained that it is customary in Louisiana for the district court to reinstate a license pending the appeal of a license revocation. *See* Oral Arg. at 13:12–28, 22:32–23:02 available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1398.mp3

a complaint with the Equal Employment Opportunity Commission ("EEOC") and that, in any event, his license was subsequently reinstated by the Louisiana district court. DVA, on the other hand, argued that 38 U.S.C. § 7402(f) required Cerwonka's removal as soon as the LSBEP revoked his Louisiana license. The agency explained that Cerwonka became "ineligible for employment as a psychologist" on February 10, 2017, the date his license was revoked. Resp't App. 36.

On October 10, 2017, the administrative judge ("AJ") issued an initial decision affirming the agency's decision to remove Cerwonka. At the outset, the AJ found it undisputed that Cerwonka's Louisiana license was revoked for cause on February 10, 2017, which put him in violation of both 38 U.S.C. § 7402(f) and the DVA's handbook, which requires employees to maintain all qualifications required for appointment. *Decision on Appeal*, 2017 MSPB LEXIS 4334, at *6–7. The AJ then considered and rejected Cerwonka's affirmative defense that he was subjected to disparate treatment based on his prior EEO activity. Both of Cerwonka's supervisors—Guidry and Dancy—testified that they were unaware that Cerwonka had previously engaged in any activity with the EEOC and thus did not consider any such activity prior to his removal. *Id*. at *11–13. The AJ found, therefore, that the record was devoid of facts supporting Cerwonka's affirmative defense of retaliation and that "the agency's proffered reason for the action was the real reason for the action." *Id*. at *14.

Having sustained the agency's charge, the AJ next considered whether the agency proved a nexus between the charge and the efficiency of the service. The AJ explained that, "[w]hen an employee loses a license or certification necessary to perform the duties of the employee's position, the requisite nexus exists between the employee's loss of the same and the efficiency of the service." *Id*. at *15. Finally, the AJ considered the reasonableness of the penalty

and reviewed the factors the agency considered in rendering its penalty determination. The AJ found that, "though the appellant's license has since been reinstated, at the time the action was taken, his Louisiana license had been revoked for cause" and the "regulations and standards mandate that an employee be separated from employment under such conditions." *Id.* at \*17–18. Accordingly, the AJ affirmed the agency's removal action.

Because Cerwonka did not petition the Board to review the AJ's initial decision, it became the final decision of the Board. Cerwonka timely petitioned this court for review, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

The scope of our review in an appeal from the Board is limited by statute. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's legal determinations, including its interpretation of a statute, de novo. *McCollum v. Nat'l Credit Union Admin.*, 417 F.3d 1332, 1337 (Fed. Cir. 2005). We review the Board's findings of fact for substantial evidence. *Id.*

On appeal, Cerwonka argues that there "was no rational basis" for the VA to remove him from his position "based on a brief temporary revocation of his Louisiana License." Pet'r Br. 4. According to Cerwonka, the record is devoid of evidence that his removal promoted the "efficiency of the service" and there was "absolutely no discussion of penalty." Pet'r Br. 9, 11. Cerwonka also reasserts his argument that he was removed in retaliation for engaging in prior protected activity and raises several procedural challenges.

The government responds that, because the DVA removed Cerwonka pursuant to 38 U.S.C. § 7402(f), we should affirm the Board's decision without considering the separate and distinct removal standards provided within Title 5. With respect to Cerwonka's remaining arguments, the government argues that substantial evidence supports the Board's rejection of his retaliation claim and that his procedural challenges are without merit. As explained below, we agree with the government on each point.

## A.  38 U.S.C. § 7402(f) Controls Cerwonka's Removal

Resolution of this appeal involves the interplay between certain procedural protections provided in the Civil Service Reform Act ("CSRA") on the one hand, and Veterans Health Administration ("VHA") personnel qualifications on the other. In particular, it requires us to interpret and examine the relationship between Chapter 75 of the CSRA, which governs adverse actions against certain federal employees, and Chapter 74 of Title 38, which governs personnel at VHA.

It is well established that "statutory construction begins with the language of the statute itself." *Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1148 (Fed. Cir. 1999). "If the statutory language is plain and unambiguous, then it controls" the inquiry. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1320 (Fed. Cir. 2003) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). In this case, consideration of these factors makes clear that 38 U.S.C. § 7402(f)—and not the standard set forth in the CSRA—governs Cerwonka's removal.

Pursuant to Chapter 75 of the CSRA, an agency may remove an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). An agency must establish three criteria when taking an adverse action—such as a removal—against an employee. *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009). First, it must prove that the charged conduct occurred. *Id.* (citing 5 U.S.C. § 7701(c)(1)(B)). Second, the agency must establish a nexus between that conduct and the efficiency of the service. *Id.* (citing § 7513(a)). Third, it must demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981). *Id.*

Separately, Chapter 74 of Title 38 governs personnel at VHA, and Section 7402 specifically governs the qualifications of appointees. *See* 38 U.S.C. § 7402. With respect to appointees in certain statutorily-identified health care positions, 38 U.S.C. § 7402(f) provides that:

(f) A person may not be employed in a position under subsection (b) (other than paragraph (4) of that subsection) if –

(1)  the person is or has been licensed, registered, or certified (as applicable to such position) in more than one State; and

(2)  either –

(A)  any of those States has terminated such license, registration, or certification for cause; or

(B)  the person has voluntarily relinquished such license, registration, or certification in any of those States after being notified in writing by that State of potential termination for cause.

38 U.S.C. § 7402(f). In other words, an employee licensed in multiple states may not be employed by VHA if any one of those states terminates his license for cause. *Id.*[2] By statute, this provision applies to psychologists working at VHA, including Cerwonka. 38 U.S.C. § 7402(b)(8).

Consistent with the plain language of the statute, the DVA has interpreted 38 U.S.C. § 7402(f) to require the immediate removal of an employee who has a license terminated for cause. Specifically, DVA's handbook provides that "[a]n employee who fails to meet or who fails to present evidence of meeting the statutory, e.g., 38 U.S.C. § 7402, or regulatory requirements for appointment *will be separated.*" *Decision on Appeal*, 2017 MSPB LEXIS 4334, at *2 (emphasis added).

According to the government, there "appears to be an inconsistency between the CSRA and 38 U.S.C. § 7402(f)." Resp't Br. 11. While the former requires the agency to address the efficiency of the service and the reasonableness of the penalty prior to removal, the latter prohibits the agency from employing any psychologist who had a license

---

[2]    A report from the Committee on Veterans' Affairs reveals that Congress added 38 U.S.C. § 7402(f) in response to an "undesired result" whereby a "VHA health care professional who is licensed (registered or certified) by more than one state remains qualified for VHA employment even when one of those licenses is terminated for cause as long as the individual maintains [an]other active, full, and unrestricted license." H.R. Rep. No. 106-237, at 54 (1999). Given concerns "regarding issues of care-quality in the VA," Congress enacted 38 U.S.C. § 7402(f) "to ensure patient safety and quality of care." *Id.* Accordingly, the legislative history confirms that Congress intended 38 U.S.C. § 7402(f) to make health care practitioners "ineligible for VHA employment"—and thus removable—if their license is terminated for cause. *Id.*

terminated for cause, without permitting any additional considerations or affording any discretion. 38 U.S.C. § 7402(f). As the government points out, if DVA decided to permit a psychologist to continue working at VHA despite a license revocation—perhaps because removal would not promote the efficiency of the service or because balancing the *Douglas* factors suggested that a lesser penalty was sufficient—then DVA would be in violation of 38 U.S.C. § 7402(f), which requires removal.

By statute, Congress has resolved any inconsistency between these removal standards and has made clear that, in the event of a conflict, Title 38 overrides Title 5, unless otherwise stated. Specifically, within Chapter 74 of Title 38, Congress provided that:

> Notwithstanding any other provision of law, no provision of title 5 . . . which is inconsistent with any provision of . . . this chapter shall be considered to supersede, override, or otherwise modify such provision of . . . this chapter except to the extent that such provision of title 5 . . . specifically provides, by specific reference to a provision of this chapter, or such provision to be superseded, overridden, or otherwise modified.

38 U.S.C. § 7425(b). We have held that, "in the absence of any evidence of Congressional intent to override or modify a provision of Title 38, section 7425(b) must preclude any such modification." *Harding v. Dep't of Veterans Affairs*, 448 F.3d 1373, 1376 (Fed. Cir. 2006); *see also Scarnati v. Dep't of Veterans Affairs*, 344 F.3d 1246, 1248 (Fed. Cir. 2003) (finding that, pursuant to 38 U.S.C. § 7425(b), the Veterans Employment Opportunities Act of 1998 "cannot override" the appointment process within Title 38).

Nothing in Chapter 75 of the CSRA references 38 U.S.C. § 7402(f) or specifically provides that the CSRA supersedes, overrides, or modifies 38 U.S.C. § 7402(f). Accordingly, 38 U.S.C. § 7425(b) makes clear that the CSRA

cannot supersede, override, or modify the specific VHA removal standard set forth in 38 U.S.C. § 7402(f).

Here, it is undisputed that Cerwonka was licensed in both Louisiana and New York. *Decision on Appeal*, 2017 MSPB LEXIS 4334, at \*7. It is likewise undisputed that his Louisiana license was revoked for cause on February 10, 2017. *Id*. Taken together, these undisputed facts compelled the agency to remove Cerwonka from his position as a psychologist with the Alexandria Veterans Administration Health Care System. *See* 38 U.S.C. § 7402(f). Accordingly, we find that the agency's removal decision complied with the applicable standard set forth in 38 U.S.C. § 7402(f).[3]

Cerwonka cites the fact that his Louisiana license was reinstated as evidence that his removal was unjustified. While it is true that the Louisiana district court reinstated Cerwonka's license pending resolution of his challenge to

---

[3] Although the standard set forth in 38 U.S.C. § 7402(f) is controlling, and the agency was not required to consider the separate standard for removal set forth within Chapter 75 of the CSRA, the agency nevertheless did so. Both the notice of proposed removal and the removal letter indicated that the agency considered the nexus between the conduct and the efficiency of the service as well as the relevant *Douglas* factors. Resp't App. 46–54. The AJ likewise sustained the agency's charge, found that Cerwonka's loss of the license necessary to perform his position provided the requisite nexus between his removal and the efficiency of the service, and considered the relevant *Douglas* factors in finding that removal was a reasonable penalty. *Decision on Appeal*, 2017 MSPB LEXIS 4334, at \*6–20. Accordingly, although the agency was required to remove Cerwonka pursuant to 38 U.S.C. § 7402(f), and it did not need to consider the CSRA's removal standard, both standards were satisfied in this case.

the LSBEP's revocation decision, that reinstatement occurred *after* the deciding official sustained the charge against Cerwonka, and *after* Cerwonka was officially removed from his position. The Board's role in these cases is limited to reviewing Federal agency personnel actions and determining whether those actions were proper at the time they were made. *See* 5 C.F.R. § 1201.4(f) (defining the term "appeal" to the Board as "[a] request for review of an agency action"). Consistent with this approach, the AJ acknowledged that Cerwonka's Louisiana license was reinstated, but properly focused on the circumstances existing at the time the agency made its removal decision. Cerwonka cites no authority for the proposition that the Board must consider events that occurred after an employee is removed.[4]

Here, the sole charge against Cerwonka was failure to maintain a current license, in violation of 38 U.S.C. § 7402(f). The statute provides that a psychologist "may not be employed" by VHA if one of his licenses is terminated for cause. 38 U.S.C. § 7402(f). By its express terms, therefore, the statute compels removal and does not permit DVA to consider subsequent events. Nor does it give the

---

[4]    Although the Board "reviews *de novo* the merits of an agency's decision to take adverse action against an employee," and thus cannot ignore post-removal evidence presented for the first time to the Board, that post-removal evidence must relate to the agency's decision. *Brook v. Corrado*, 999 F.2d 523, 528 (Fed. Cir. 1993) (explaining that "arbitrators must apply the same substantive standards" as the Board and finding that the arbitrator erred in refusing to consider an investigative report because it "was relevant to the removal decision and was not barred from consideration by reason of having been obtained after the notice"). In other words, new evidence must relate to the removal decision, not to events that took place after removal.

agency discretion to impose lesser penalties. Despite the express language of the statute, Cerwonka argues that, if the loss of license is appealable, then removal is not warranted. *See* Oral Arg. at 11:09–38 ("As long as that loss of license, in whatever form it was, was something that was appealable, and we demonstrated it was, and returnable, as we demonstrated it was and is, then I say that you then base your decision, penalty, on whether there is any chance he is going to take care of that problem. You give the person an opportunity to take care of the problem. He did here."). To the extent Cerwonka is arguing that the Board must consider subsequent events or that there should be a waiting period prior to removal to give an opportunity for an appeal, those arguments find no support in the statute, and we decline Cerwonka's invitation to read exceptions into the express terms of 38 U.S.C. § 7402(f).

It is undisputed that Cerwonka's Louisiana license had been revoked, for cause, at the time the agency removed him from employment. *Decision on Appeal*, 2017 MSPB LEXIS 4334, at *7. Cerwonka did not present any evidence to refute this fact. Accordingly, the AJ correctly concluded that the agency action under review—Cerwonka's removal—was proper at the time it was made.

## B. Cerwonka's Remaining Arguments Are Without Merit

Cerwonka reasserts his argument that he was removed in retaliation for prior protected activity and raises several procedural arguments. As to his retaliation claim, the AJ considered this argument and found that neither Dancy nor Guidry were aware of Cerwonka's prior protected activity and thus could not have considered it prior to removal. *Decision on Appeal*, 2017 MSPB LEXIS 4334, at *13 ("Guidry and Dancy both credibly testified that the appellant's EEO activity was not a factor in their actions."). And the AJ expressly found that "the agency's proffered reason for the action was the real reason for the action."

*Id.* at \*14.  Substantial evidence supports this conclusion, and we defer to the AJ's factual findings and credibility determinations on this issue.  *See Belanger v. Office of Pers. Mgmt.,* 1 F.3d 1223, 1227 (Fed. Cir. 1993) ("A petitioner who challenges the factual underpinnings of the [Board's] decision must show that the decision is unsupported by substantial evidence."); *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010) ("We have held that 'an evaluation of witness credibility is within the discretion of the Board and that, in general, such evaluations are virtually unreviewable on appeal.'" (citation omitted)).

Next, Cerwonka argues that the DVA failed to give him 30-day advance notice of his removal, as is required by the agency's handbook.  The government responds that: (1) the handbook provision Cerwonka cites—which governs disciplinary and adverse actions under Title 5—is not applicable because he was removed under 38 U.S.C. § 7402(f); (2) it is undisputed that Cerwonka received the procedural protections that are afforded to employees removed for failure to meet statutory and regulatory requirements, like Cerwonka; and (3) even if Cerwonka was entitled to a 30-day notice period prior to removal, the agency complied with such a requirement.  Because we agree with the government on the last point, we need not address the others.

The record reveals that the agency notified Cerwonka of the proposed removal on February 24, 2017, and he was ultimately removed effective April 1, 2017—36 days later. *Decision on Appeal*, 2017 MSPB LEXIS 4334, at \*3–4.  Although Cerwonka alleges that he did not receive notice of removal until March 22, 2017, the AJ considered Cerwonka's testimony and found his claims regarding notice "not credible" and "insufficient to overcome the presumption of delivery." *Id.* at \*3, n.2.  We defer to the AJ's factual findings and credibility determination on appeal.

Finally, Cerwonka argues that the agency provided the AJ with information regarding the reasons for his license

revocation that were, according to Cerwonka, "entirely aside from the sole charge of 'failure to maintain current Louisiana license.'" Pet'r Br. 6. It is well established that "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Snyder v. Dep't of the Navy*, 854 F.3d 1366, 1376 (Fed. Cir. 2017) (quoting *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988)). We therefore "will not overturn the board on such matters unless an abuse of discretion is clear and is harmful." *Id*. Cerwonka fails to identify what evidence was improperly supplied or considered and further fails to demonstrate that admission of any such evidence resulted in a clear and harmful abuse of discretion.

In any event, once the agency found that Cerwonka had his Louisiana license revoked for cause and was thus in violation of 38 U.S.C. § 7402(f), it had no choice but to remove him from his position with the Alexandria Veterans Administration Health Care System. *See* 38 U.S.C. § 7402(f). Additional evidence regarding the reasons for Cerwonka's license revocation could not alter that fact. Therefore, even if the AJ had erred in admitting the evidence, any such error would be harmless.

III. CONCLUSION

For the foregoing reasons, we conclude that 38 U.S.C. § 7402(f) governs Cerwonka's removal and that the agency complied with its terms. We therefore affirm the Board's decision.

**AFFIRMED**