NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3012

PATRICIA J. KELLY,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

Patricia J. Kelly,  of Eagan, Minnesota, pro se.

Steven J. Abelson, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director.

Appealed From: United States Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3012

PATRICIA J. KELLY,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE

Respondent.

_____

DECIDED: March 12, 2007

_____

Before RADER, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

RADER, Circuit Judge.

The Merit Systems Protection Board (the Board) affirmed the Department of Agriculture's (Agency's) decision to remove Patricia J. Kelly from her position as a Resource Management Specialist with the Agency's Food Safety and Inspection Service (FSIS) office. See Kelly v. Dep't of Agric., CH-0752-05-0040-I-1 (M.S.P.B. August 15, 2006) (Final Order), affirming Kelly v. Dep't of Agric., CH-0752-05-0040-I-1 (M.S.P.B. April 5, 2006) (Initial Decision). For the reasons set forth below, this court vacates the decision of the Board and remands for further proceedings.

I

At the time of her removal, Ms. Kelly had been employed with the Agency for seven years. Ms. Kelly worked a "5-4-9" schedule. Under this biweekly schedule, Ms. Kelly's first week consisted of five nine-hour days while the second week consisted of three nine-hour days, one eight-hour day and Friday off. Additionally, Ms. Kelly was authorized to take a "midday band" — time off in the middle of the workday for other activities. Midday band time had to be made up later in the day.

Ms. Kelly and Dr. Nathaniel Clark, District Manager of the Minneapolis district office, both attended a noon "spinning" class at a gym near the office. Fellow employees expressed concern that the midday absences of Ms. Kelly and Dr. Clark interfered with operation of the office. In 2004, the Agency investigated Ms. Kelly and Dr. Clark. As a result of the investigation, the Agency recommended removing Ms. Kelly based on one charge of improper conduct supported by 11 specifications. The deciding official, Ms. Sandra Bain, sustained specifications 1-7 and 10-11 and determined to remove Ms. Kelly.

On appeal to the Board, the Administrative Judge vacated specifications 2-7 and 10 but sustained specifications 1 and 11. Specifications 2-7 concerned Ms. Kelly's alleged failure to make up time on specific dates. Specifically, the parties dispute at what time Ms. Kelly returned to the office from the spinning class. The parties agree Ms. Kelly left the office to go to spinning class at 11:30 AM. The agency argues Ms. Kelly returned to the office at 2:00 PM, requiring Ms. Kelly to make up 2.5 hours. Ms. Kelly maintains she returned to the office at

1:30 PM, requiring her to make up 2.0 hours.  Specification 10 concerned four allegedly improper claims for overtime.

Regarding specifications 2-7, the Administrative Judge reviewed the testimony of the Agency's witnesses and found a lack of specificity and conflicting testimony about the dates in question.  Further, Ms. Kelly provided documentary evidence, emails with timestamps after she allegedly left the office, refuting many of the claims.  On specification 10, the Administrative Judge again found that the Agency did not provide sufficient specificity to support the charges.

Specification 1 alleges Ms. Kelly's statements "I return to office around 1:30 pm" and "I always make up time," given under oath, were false.  The Administrative Judge found that the Agency provided enough credible evidence to show that Ms. Kelly often returned to the office around 2:00 PM.  The Administrative Judge also found it inherently improbable that Ms. Kelly attended a 45-minute spin class, lifted weights, showered, and got back to the office by 1:30 PM.

Specification 11 alleges Ms. Kelly improperly used her government computer for personal use.  Specifically, Ms. Kelly allegedly shared jokes and watched "Oprah" on her computer.  Indeed, a search of Ms. Kelly's computer disclosed software supporting television viewing on the computer and several jokes.

Three weeks before Ms. Bain issued the Agency's decision, Dr. Clark sent Ms. Bain an email opposing the proposed removal.  In the email, Dr. Clark provided an extensive character reference and further suggested Dr. Craig White

(the program deputy district manager) and Doctor Jeffrey Legg (Compliance Deputy District Manager of the Minneapolis district office) could also attest that Ms. Kelly is an honest employee. Ms. Bain contacted Dr. White and Dr. Legg. Both doctors provided negative comments. Ms. Kelly, however, was not notified of their comments until receiving the decision letter.

II

This court must affirm any agency action, findings, or conclusions unless: (1) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2006); Hayes v. Dep't of Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984). However, the introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice. Stone v. F.D.I.C., 179 F.3d 1368, 1376 (Fed. Cir. 1999).

The Board dismissed Ms. Bain's *ex parte* communications with Drs. White and Legg as harmless, stating "the key determination whether a violation of the appellant's due process rights occurred is whether the challenged *ex parte* communication improperly determined the outcome of the disciplinary decision." In support of this proposition, the Board cited Blake v Dep't of Justice, 81 M.S.P.R. 394 (1999) and Sullivan v. Dep't of the Navy, 720 F.2d 1266 (Fed. Cir. 1983). The Board further noted Ms. Bain testified that she was the deciding official and that no one in the Minneapolis District Office tried to influence her

decision. The Board also noted Ms. Bain testified in determining Ms. Kelly's credibility. Ms. Bain noted that she relied on the statements in the investigation and not the conversation with Dr. White.

As this court has previously explained, *ex parte* communications rising to the level of a procedural due process violation cannot be excused as harmless error. Stone, 179 F.3d at 1377. An adversary's *ex parte* communications to a deciding official render that official's claims of a lack of influence unavailing. See Camero v. United States, 375 F.2d 777, 780 (Ct. Cl. 1967) ("After listening to and discussing with each attorney his views on the case, Wolverton stated that he formed his own opinion. . . . We have no doubt that Wolverton formed his own opinion on what recommendations he should make to General Anderson, just as we have no doubt that General Anderson made up his own mind when he decided to sustain plaintiff's removal. The problem is, however, that both decisions were made, at least in part, on the basis of the *ex parte* communication . . ."); Stone, 179 F.3d at 1372 (finding a due process violation even though "[i]n an affidavit, the deciding official stated that he would have concluded that Mr. Stone should be removed whether or not he had seen the *ex parte* memo from the proposing official").

Further, the Board's reliance on Blake and Sullivan is misplaced. The communication in Blake concerned an alleged threat from a congressman communicated to the deciding official from a Department of Justice attorney. Blake, 81 M.S.P.R. at 413. The *ex parte* communication was discounted because the evidence of record suggested the threat was not credible and the

deciding official knew the threat was not credible. Id. at 414. Indeed, the Board further noted, "it is plain that such evidence of an *ex parte* communication from a non-disinterested adversary, had it been presented and found credible, could indeed have so tainted the disciplinary decision process that the appellant's due process rights would have been irretrievably compromised." Id.

In Sullivan, the petitioner's commanding officer sent a letter to the deciding official recommending the petitioner's removal without sending a copy to the petitioner. Sullivan, 720 F.2d at 1270. The commanding officer also made several follow up phone calls urging a quick decision. Id. This court held the commander's communications were improperly *ex parte*. Id. at 1274 (noting "where a serious procedural curtailment mars an adverse personnel action which deprives the employee of pay, the court has regularly taken the position that the defect divests the removal (or demotion) of legality, leaving the employee on the rolls of the employing agency and entitled to his pay until proper procedural steps are taken toward removing or disciplining him.") (citations omitted).

In summary, Ms. Bain contacted Drs. White and Legg (knowing the doctors had already taken a position adverse to Ms. Kelly in the record) and received further negative comments. At that point, Ms. Bain had a duty to notify Ms. Kelly and provide her an opportunity to respond before reaching a decision. Ms. Kelly's opportunity to address Drs. White's and Legg's comments before the Board after the Agency's decision was final and on appeal does not render the error harmless. Sullivan, 720 F.2d at 1273 (holding that the opportunity to defend against an *ex parte* communication on appeal does not render the error

harmless because the error is committed when the *ex parte* statements are made to the first deciding official who could decide the case in favor of the employee). This procedural defect overrides the Agency's contention that Ms. Kelly would likely have been removed on the merits of the charge without this procedural defect. Ryder v. United States, 585 F.2d 482, 487 (Ct. Cl. 1978). **[Init. 27]**

In upholding Ms. Bain's removal, the Administrative Judge found the penalty reasonable based on the sustained charges of a false statement and computer misuse. On remand, the Board will have an opportunity to review the considerable dispute in the record about computer policy in the Minneapolis district office, including many admissions of personal uses of government computers in the Minneapolis district office, including from both Drs. White and Legg. The Board may also review the record showing that others watched television in the office. The Board will also have an opportunity to reexamine the time card data showing that on seven of the twelve dates in question the alleged time claimed and not worked was less than ten minutes, including an allegation of three minutes. Altogether ten of the twelve dates allege shortfalls of sixteen minutes or less. On remand, the Board may consider whether this record fully supports a finding of intentional falsity in Ms. Kelly's statement that "I always make up time."

For the foregoing reasons, this court vacates the Board's decision and remands the case for proceedings consistent with this opinion.

### *VACATED* AND *REMANDED*.