NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**JOSEPH VICK,**
*Petitioner,*

v.

**DEPARTMENT OF TRANSPORTATION,**
*Respondent.*

———————————

2013-3073

———————————

Petition for review of the Merit Systems Protection Board in No. DA1221100725-B-1.

———————————

Decided:  November 12, 2013

———————————

JOSEPH VICK, of Mansfield, Texas, pro se.

KATY M. BARTELMA, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

———————————

Before RADER, *Chief Judge*, LINN, and WALLACH, *Circuit Judges*.

PER CURIAM

Joseph B. Vick ("Vick") appeals a final decision of the United States Merit Systems Protection Board ("Board"), denying his request for corrective action sought in his Individual Right of Action ("IRA") against the Department of Transportation ("agency") under the Whistleblower Protection Act ("WPA"). *Vick v. Dep't of Transp.*, No. DA-1221-10-0725-B-1 (Dec. 26, 2012) ("*Decision on Remand*"); *Vick v. Dep't of Transp.*, DA-1221-10-0725-B-1 (Apr. 20, 2012) ("*Decision and Remand Order*"); *Vick v. Dep't of Transp.*, DA-1221-10-0725-B-1 (June 27, 2011) ("*Initial Decision*"). We *affirm*.

## I. BACKGROUND

Vick is a GS-Safety and Occupational Health Specialist/Safety Inspector on the Technical Evaluations Team of the Federal Aviation Administration ("FAA"), in Fort Worth, Texas. On August 18, 2008, Vick reported approximately seven "Level 1" findings from one of his inspections. Eric Plura ("Plura"), Vick's supervisor, questioned Vick's classification of findings as Level 1. On August 24, 2008, Vick submitted a complaint to the Office of Inspector General, alleging that Plura was skewing Level 1 reported health hazards and attacking personally Vick for reporting Level 1 health hazards. *Decision on Remand*, slip op. at 5–6.

On March 27, 2009, Plura told Vick and other employees that only economy-sized rental cars would be authorized for official travel, with exceptions only with prior approval. *Id.* at 11–12. Following a subsequent business trip, Vick submitted a travel voucher requesting reimbursement of his expenses, including the cost of an intermediate-sized car. On April 9, 2009, Plura returned

the voucher to Vick and requested that he edit the voucher to reflect the cost of an economy-sized car. On September 1, 2009, Plura repeated the request, indicating that Vick could add comments to the voucher to explain the discrepancy between the actual receipts and the amount requested for reimbursement. Vick refused. Vick has explained that he did not resubmit the voucher because he believed it would have been illegal for him to claim reimbursement for an economy-sized car when in fact he rented an intermediate-sized car. *Id.* at 12.

On February 19, 2010, Plura proposed suspending Vick for five days based on a charge of failure to follow his instructions. Vick did not respond, and Plura issued on April 19, 2010 a letter suspending Vick for five days. *Id.*

On April 26, 2010, Vick filed a complaint with the Office of Special Counsel ("OSC"). In his complaint, Vick claimed to suffer a personnel action—suspension—for refusing to obey an order. Vick alleged that Plura's order required Vick to submit false information and therefore was unlawful. He further alleged that he was not reimbursed for the travel expenses. The OSC did not find evidence of any violations.

Then, on August 9, 2010, Vick filed an IRA appeal with the Board, appealing the suspension and filing claims for prohibited personnel practices and whistleblowing, specifically naming his August 24, 2008 complaint as the whistleblowing disclosure. He requested consequential damages in connection with the whistleblowing claim. His appeal listed a number of personnel actions that allegedly were retaliation for his protected whistleblowing activity, including "travel voucher returned," "sick leave disapproved," "AWOL insinuation," "unlawful order regarding designated smoke room," "jury summons," the suspension at issue, and "personal leave disapproved." *Decision on Remand*, slip op. at 4.

While the appeal was pending, the agency on June 10, 2011 informed the Board that it had reimbursed Vick for the travel voucher at issue and was in the process of canceling the suspension and providing Vick with back pay and the annual pay increase he did not receive due to the suspension. *Initial Decision*, slip op. at 2. The agency argued that the appeal was moot, and the Board agreed, dismissing Vick's appeal. *Id.* at 3–4. Vick filed a petition for review, contending that because of his claim for consequential damages, his appeal was not moot. *Decision and Remand Order*, slip op. at 2. The Board this time agreed with Vick, remanding the appeal for adjudication of the whistleblower claim and—if there was jurisdiction over that claim—Vick's claims for corrective action, attorneys' fees, and consequential damages. *Id.* at 3.

On remand, the Board found jurisdiction over Vick's claim with respect only to the five-day suspension, concluding that it did not have jurisdiction over the other alleged personnel actions because they were not raised before the OSC as personnel actions. *Decision on Remand*, slip op. at 5. The Board found Vick's explanation for not resubmitting the travel voucher "disingenuous at best," *id.* at 13, and that Vick did not have a valid reason for failing to follow Plura's orders, *id.* at 13–14. Accordingly, the Board concluded that irrespective of Vick's alleged protected disclosure, the agency would have suspended Vick for failing to follow Plura's instructions to resubmit the travel voucher. *Id.* at 13–14. The Board denied Vick's claims for corrective action and did not reach the issues of attorneys' fees and consequential damages. *Id.* at 15. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

### A. Standards Of Review

This court must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). The burden of establishing reversible error in an administrative decision, such as the Board's, rests upon the petitioner. *Fernandez v. Dep't of Army*, 234 F.3d 553, 555 (Fed. Cir. 2000).

We review the Board's jurisdiction and determinations of law *de novo*. *Coradeschi v. Dep't of Homeland Sec.*, 439 F.3d 1329, 1331 (Fed. Cir. 2006); *Perry v. Dep't of the Army*, 992 F.2d 1575, 1578 (Fed. Cir. 1993). For the Board to have jurisdiction over an IRA appeal, the appellant must (1) exhaust his administrative remedies before the OSC; and (2) make non-frivolous allegations (a) that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8); and (b) that the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

The Board's fact findings are reviewed for substantial evidence. *McCollum v. Nat'l Credit Union Admin.*, 417 F.3d 1332, 1337 (Fed. Cir. 2005). "'Substantial evidence' is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Dickey v. Office of Pers. Mgmt.*, 419 F.3d 1336, 1339 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "The determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." *Griessenauer v. Dep't of Energy*, 754 F.2d 361, 364 (Fed. Cir. 1985).

## B. The Relevant Law

To prevail on a claim under the Whistleblower Protection Act of 1989, Pub. L. No. 101–12, 103 Stat. 16 (codified at various sections of 5 U.S.C.) ("WPA"), an employee

must establish by a preponderance of the evidence that he made a protected disclosure, that subsequent to the disclosure he was subject to personnel action, and that the disclosure was a contributing factor to the personnel action taken against him. *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1322 (Fed. Cir. 1999). However, if the agency proves by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure, a violation of the WPA cannot be found. *Id.* Relevant factors to consider are "the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Id.* at 1323.

## C. The Board Did Not Incorrectly Decide Or Fail To Take Into Account Any Relevant Facts

Vick alleges error with respect to a number of factual issues. First, he contends that the Board erred by addressing only his suspension as a potential personnel action while ignoring other alleged personnel actions, such as the failure to reimburse him for undisputed travel expenses, denial of sick leave, an AWOL accusation, and the smoke room order. Pet'r's Informal Br. at 1; Pet'r's Br. at 2. However, neither the Board nor this court have jurisdiction over those allegations.

While Vick's April 26, 2010 complaint to the OSC does indicate that he was not reimbursed for the travel voucher in question, the complaint raises only his suspension as the alleged personnel action. 5 U.S.C. § 2302(a)(2)(A) provides a list of actionable "personnel actions," including suspensions under fourteen days (under 5 U.S.C. § 7501) and "decisions concerning pay, benefits or awards." Vick's submitted complaint included a form for indicating which of the personnel actions listed in § 2302(a)(2)(A) where

applicable to his complaint. Vick indicated only that a reprimand, suspension, removal or other disciplinary or corrective action allegedly was taken in response to his alleged protected activity. Vick left blank, and therefore did not raise to the OSC, any allegation that the personnel action also involved a decision about pay, benefits, or awards.[1]

Because they were not raised to the OSC, the Board properly concluded that Vick had not exhausted his administrative remedies before the OSC and therefore that it—and this court—lack jurisdiction to consider WPA claims based on any alleged personnel actions other than the five-day suspension.

Vick also contends that the Board erred by failing to consider a number of facts with respect to the merits of his WPA claim relating to the suspension. He alleges that the Board did not consider that 1) the agency failed to follow its reimbursement procedures and has failed to pay late fees, 2) a similarly-situated individual was allowed to rent larger cars, 3) non-whistleblowing employees were not subject to denial of sick leave, an AWOL accusation, and the "smoke room order," 4) and he did have a valid reason for not complying with Plura's orders.

With respect to the alleged failure to follow the reimbursement procedures, Vick contends, first, that Plura should have allowed the voucher to be processed so that at least the undisputed items could be paid and, second, that Plura lacked the authority in the first instance to establish a policy limiting Vick to use of only economy-

---

[1] Because we conclude that Vick did not raise the failure to reimburse as a potential personnel action to the OSC, we need not reach the agency's contention that reimbursements cannot be "pay, benefits, or awards" under § 2302(a)(2)(A)(ix).

sized rental cars. Vick similarly contends that the failure to pay late fees is evidence of retaliatory motive. Pet'r's Informal Br. at 1. To the extent that Vick argued these facts below, this court presumes—absent specific evidence to the contrary—that the fact finder reviews all evidence presented unless he explicitly expresses otherwise. *See Gonzales v. West*, 218 F.3d 1378, 1381 (Fed. Cir. 2000) (citing *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986)).

Indeed, the Board did specifically find, based on his "testimony as well as his demeanor," that "any motive [Plura] may have had to retaliate against the appellant is very slight." *Decision on Remand*, slip op. at 14. The Board further found that "[t]he employees to whom the appellant compared himself were not similarly situated for several reasons such as lack of the same supervisors and the absence of any charges against any other employees." *Id.* at 15. Thus, to the extent that Vick argues that these facts tend to establish that Plura did have a motive to retaliate or that the agency had not taken similar actions against similarly-situated, non-whistleblower employees, we cannot conclude that the Board's findings to the contrary lack substantial evidence.

With respect to allegedly similarly-situated individuals allowed to rent larger cars, the Board explicitly considered the relevant facts offered by Vick. *Decision on Remand*, slip op. at 14-15. Vick points to Robert Ibbotson ("Ibbotson") as a similarly-situated individual who was allowed to rent intermediate-sized cars. The Board noted that Ibbotson is 6'4" tall, and Ibbotson testified of an agreement with his supervisor to rent larger cars due to his size. *Id.* Plura testified that exceptions to the general rental-car policy could be made. *Id.* That Ibbotson may have shared the same supervisor as Vick, as Vick contends, does not lead to the conclusion that the Board lacked substantial evidence to find that Ibbotson is not similarly situated to Vick.

With respect to allegations that other, non-whistleblowing employees were not subject to denial of sick leave, an AWOL accusation, and the "smoke room order," the Board noted that "[t]he employees to whom the appellant compared himself were not similarly situated for several reasons such as lack of the same supervisors and the absence of any charges against any other employees." *Id.* at 15. Though the Board's decision did not explicitly discuss Vick's contentions with respect to sick leave, AWOL allegations, and the "smoke room order," we have no basis to conclude that the Board did not consider all of the evidence before it on this point. *See Gonzales*, 218 F.3d at 1381 (this court presumes—absent specific evidence to the contrary—that the fact finder reviews all evidence presented). This court again cannot conclude that the Board's finding lacks substantial evidence given the Board's findings that the other employees had different supervisors or did not have charges against them.

With respect to Vick's reasons for noncompliance with Plura's orders, the Board explicitly did consider whether Vick had a valid excuse, but found Vick's explanation "disingenuous at best." *Decision on Remand*, slip op. at 13. That finding is supported by substantial evidence, including testimony that Vick was instructed to provide a note on the voucher to explain any discrepancy. *Id.* The Board's decision involved determinations of witness credibility, including Vick and Jacqueline Francis. *Id.* Those determinations are within the Board's discretion, and we cannot find any abuse of that discretion based on this record.

### D. The Board Did Not Consider The Wrong Law

Though Vick at least briefly contends that the Board applied the wrong law, he does not develop that contention and it is waived. *See SmithKline Beecham Corp. v Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("[M]ere statements of disagreement with a district court

as to the existence of factual disputes do not amount to a developed argument."). Moreover, it is clear that the Board consistently applied the WPA and this court's precedents as controlling law.

E. Vick's Due Process Rights Have Not Been Violated

Vick also contends that his due process rights have been violated in a number of ways: 1) the Board's denial of Vick an opportunity to cross examining Jacqueline Francis and David Medina, 2) the agency's failure to reimburse him for the undisputed items on his voucher, to pay late fees, and to provide reasons for declining to reimburse him for certain items, 3) Plura's failure to provide a Douglas Factor Checklist, 4) Vick's supervisor's failure to provide notice of his appeal rights, and 5) the agency's failure to preserve evidence of Vick's travel vouchers.

First, he appears to contend that the Board violated his due process rights by not allowing him to cross examine Jacqueline Francis and David Medina. Pet'r's Informal Br. at 3. However, "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988). "If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Id.* at 1379.

Vick contends that cross examination would have allowed him to develop which, if any, agency travel policy allowed some employees to rent larger cars while he was suspended relating to the rental of an intermediate-sized car. Pet'r's Reply Br. at 6. Vick does not explain how development of this fact could have affected the outcome of his case. Ibbotson and Plura both testified with respect to the agency's practice concerning the travel policy and

its exceptions, and Vick does not contend he was denied an opportunity to cross examine either witness. Accordingly, we cannot conclude that his due process was violated when the Board prevented him from cross examining these witnesses.

Second, Vick alleges that his due process rights were violated when the agency failed to follow its reimbursement procedures by not accepting the voucher and paying at least the undisputed items, by refusing to pay late fees, and also by refusing to explain why he was not being reimbursed. But the issue on appeal is whether Vick was suspended in retaliation for protected whistleblowing activity, and any failure to follow reimbursement procedures cannot have deprived Vick of his due process rights with respect to this WPA claim.

Third, Vick complains that he was deprived of due process when Plura prepared a Douglas Factors Checklist and failed to provide the list to him both before making the decision on the suspension and during discovery. However, nothing with respect to the Douglas Factors Checklist could have deprived Vick of his due process rights with respect to this WPA claim.

Fourth, Vick contends that his supervisors did not apprise him of his rights to appeal. Pet'r's Br. at 4. However, he does not develop this argument in any way, thus waiving the argument. *See SmithKline*, 439 F.3d at 1320. In any event, the record indicates that he was informed of his rights to appeal throughout this process.

Fifth, Vick contends that the agency failed to preserve evidence of his travel vouchers, but he again does not develop an argument as to how this deprived him of a meaningful opportunity to purse his WPA claim, and thus has waived it. *See SmithKline*, 439 F.3d at 1320.

Vick cites to a number of cases concerning violations of due process, Pet'r's Reply Br. at 7–8, none of which are

applicable here. Vick cites to both *Young v. Dep't of Housing and Urban Dev.*, 706 F.3d 1372, 1376 (Fed. Cir. 2013) and *Kelly v. Dep't of Agr.* 225 Fed. Appx. 880, 882, 2007 WL 786351, at *2 (Fed. Cir. 2007). In each case, the government came into possession of new and material information through *ex parte* communications, and the petitioner was not provided notice or an opportunity to respond. *Diehl v. Dep't of Army,* 118 M.S.P.R. 344, 346-47 (MSPB 2012), the third and final due process case cited by Vick, addressed "what procedures are due when an agency indefinitely suspends an employee based upon the suspension of access to classified information, or pending its investigation regarding that access, where the access is a condition of employment."

Each of these cases concerns the deprivation of due process as it relates to the petitioner's notice and opportunity to respond to or pursue the claim over which the tribunal had jurisdiction. Here, the court has jurisdiction over the WPA claim that Vick allegedly was suspended in retaliation for protected whistleblowing activity. Vick identifies nothing that indicates he was deprived of meaningful notice of and opportunity to pursue that claim.

Vick also contends that the fact that the agency has not specified what section of the travel policy was violated has undermined his "right to appeal." Pet'r's Br. at 3. To the extent that Vick contends that this is a due process violation, the contention fails. The agency has not contended that Vick violated the travel policy. The issue has been that Vick refused to follow orders from Plura to submit travel vouchers.

## III. CONCLUSION

For the reasons stated above, this court affirms the Board's decision.

## AFFIRMED

## IV. COSTS

Each party shall bear its own costs.