**Robert BEARD, Petitioner,**

v.

**GENERAL SERVICES ADMINISTRATION, Respondent.**

**Appeal No. 85–2035.**

United States Court of Appeals, Federal Circuit.

Sept. 19, 1986.

Phillip R. Kete, Washington, D.C., for petitioner.

George M. Beasley, III, Sr. Trial Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With him on brief were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director. Lloyd L. Hurst, Office of Regional Counsel, Gen. Services Admin., San Francisco, Cal., of counsel.

Before FRIEDMAN, BALDWIN, and BISSELL, Circuit Judges.

FRIEDMAN, Circuit Judge.

The petitioner Beard challenges the decision of the Merit Systems Protection Board (Board) affirming his removal from the General Services Administration (GSA or agency) on the grounds that (1) critical findings of the Board are not supported by substantial evidence, and (2) the Board was required itself to determine the appropriate penalty for the violations found instead of reviewing the agency's choice of penalty to determine whether it constituted an abuse of discretion. We reject these contentions and therefore affirm the Board.

I

A. Beard was employed by the GSA as a protective service officer. One of his duties was to maintain order in the cells in the border station to which he was assigned.

On the evening of October 9, 1983, a handcuffed Mexican alien whom the Immigration and Naturalization Service had arrested was placed in a holding cell in the station, until he could be turned over to the Mexican police. The alien began pounding on the cell door, which had no window. Beard suspected that the alien was intoxicated and was hitting the metal cell door with his head. Beard told the alien to stop the pounding. When the pounding continued, Beard attempted to open the door but could not unlock it. Beard believed that the alien was jamming the doorlock by leaning against the door.

Beard then sprayed a chemical irritant projector (CIP or mace) under the door to force the alien to move away from it. After the burst of mace, the alien moved back from the cell door, but Beard still was

unable to open the door until he forced it open with a crowbar. The mace had not injured the alien.

The agency rules concerning the use of mace provided that: (1) "CIP shall be used only after all other reasonable efforts to control a violent person have failed;" (2) CIP "shall not be applied to any subject once the subject is secured and properly in custody;" (3) CIP is "permitted for use against subjects who confine themselves in enclosed ... rooms and refuse to emerge only as a last resort to prevent serious injury to an officer, innocent citizen, or the subject;" and (4) "[a]ll uses of CIP except for authorized training uses, shall be reported on GSA Form 3155, Offense Report." Federal Protective Service, Uniformed Force Operations Handbook PBS P 5930.17, chapter 49.

B. On October 31, 1983, the agency notified Beard that he had violated its rules concerning the use of mace and that it proposed to remove him. In response to the notice, Beard submitted a statement on GSA Form 3155 explaining his use of mace. The agency rejected Mr. Beard's explanation for his actions and removed him.

In selecting the penalty of removal, the agency considered the seriousness of the offense, "which demonstrated incredibly poor judgment," the fact that the spraying of mace into the holding cell "was a serious violation of directives," Beard's past disciplinary record of a five-day suspension in May 1981 for "threatening and using offensive language towards [his] supervisor," his past "satisfactory or better" work record, and the guidelines concerning mitigation of penalties enunciated in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981). The agency concluded that nothing less than removal "can be an adequate and effective sanction for deterring any future misconduct."

Beard appealed the removal to the Board which, after a hearing, sustained the agency action. The presiding official of the Board ruled that the agency had proved, by a preponderance of the evidence, that Beard violated the rules concerning the use

of mace because: (1) Beard had not used "all other reasonable efforts" to control the alien before he used the mace; (2) the alien was already secured and properly in custody before Beard used the mace; (3) Beard had not used mace "as a last resort"; and (4) Beard did not submit a report of the incident.

The presiding official determined that the agency's penalty of removal was within the limits of reasonableness because "of the seriousness of the offense, the prisoner's possible intoxication [increasing his sensitivity to CIP], the availability of alternatives, the evidence that [Beard] did not warn the prisoner, and [Beard's comment after the incident to the Director of the Federal Protective Service Division] that he would do the same thing again [in similar circumstances]."

The full Board denied review of the presiding official's initial decision.

## II

██ Beard's challenges to the sufficiency of the evidence to support the Board's findings of violation rest upon a misapprehension of the requirements of the agency's rules regarding the use of mace and the violations of those rules the agency found.

A. Beard argues that the values underlying the rules on the use of mace are to avoid improper injury or risk of injury, and that his actions were consistent with those values because he did not injure, or attempt or intend to injure the prisoner. The prohibitions and limitations in the agency's rules governing the use of mace are clear and explicit. They do not provide for the kind of policy inquiry that Beard would read into them. The record contains substantial evidence that supports the Board's findings that Beard violated the agency's rules governing the use of mace.

B. Beard further contends that the finding that he failed to report the use of mace by submitting GSA Form 3155 is not supported by substantial evidence because he submitted that form on October 31, 1983.

That was 22 days after he used the mace, and he submitted the report only in response to the notice of infraction he had received on that date.

Agency rule # 7k of PBB P 5930.17, Part 2, CHGE 14, as of June 26, 1981, required that all preliminary investigation reports, including reports on GSA Form 3155, be submitted to the designated authority within 24 hours after the employee arrived at the scene. The requirement in the agency's rules that "[a]ll uses of CIP ... shall be reported on GSA Form 3155" implicitly incorporated the agency's 24–hour period for submitting the report. Beard did not submit the report within that time, and his belated filing did not comply with the agency's rules.

### III

Beard contends that the Civil Service Reform Act of 1978 requires the Board to determine independently the proper penalty, and that if the statute does not so require, it unconstitutionally denied him his right to a penalty determination by an independent decisionmaker. He further contends that if, contrary to his argument, the Board's review of the penalty of removal under the abuse-of-discretion standard was proper, the Board's affirmance of the removal cannot stand because it rested in part upon a finding that is not supported by substantial evidence, namely, that Beard stated after spraying the mace that he would do the same thing again in similar circumstances.

A. The government contends that Beard's failure to raise the statutory and constitutional issues before the Board bars him from arguing them here. Beard responds that he was not required to exhaust his administrative remedies because (1) his contentions here involve only issues of law, and (2) it would have been futile to present those issues to the agency.

Although ordinarily we do not consider questions not raised before the Board, we agree with Beard that his failure to present the arguments relating to the Board's alleged obligation to determine the penalty de novo does not preclude him from raising those contentions here. "Resolution of [the statutory] issue does not require the development of a factual record, the application of agency expertise, or the exercise of administrative discretion." *R.R. Yardmasters of America v. Harris,* 721 F.2d 1332, 1338–39 (D.C.Cir.1983) (footnote omitted). Moreover, since the Board's view of its authority in reviewing penalties was fully settled, "[r]aising this claim to the [Board] ... would have been an exercise in futility, and presents an exception to the exhaustion doctrine." *Hatcher v. Dept. of the Air Force,* 705 F.2d 1309, 1312 n. 2 (11th Cir.1983). Finally, the principle of exhaustion of administrative remedies does not always apply to constitutional challenges to the agency's action. *Hayes v. Dept. of the Navy,* 727 F.2d 1535, 1539 (Fed.Cir.1984); *Sullivan v. Dept. of the Navy,* 720 F.2d 1266, 1274 n. 2 (Fed.Cir. 1983).

B. Prior to the Civil Service Reform Act, it was "well established that the penalty for employee misconduct is a matter usually left to the sound discretion of the executive agency," and that the penalty could be rejected only if "the punishment exceeds the range of sanctions permitted by statute or regulation" "or if the penalty is so harsh that it amounts to an abuse of discretion." *Boyce v. United States,* 543 F.2d 1290, 1292, 211 Ct.Cl. 57 (1976). *See also Jones v. United States,* 617 F.2d 233, 236, 223 Ct.Cl. 138 (1980) ("The determination of the appropriate penalty for an employee's violation of the standards that govern the performance of his duties and his conduct in connection therewith is a matter committed primarily and largely to the discretion of the employer"). This principle reflects the important policy consideration that the employing (and not the reviewing) agency is in the best position to judge the impact of the employee misconduct upon the operations of the agency, the prospects for the employee's rehabilitation and improvement, and the need to maintain and encourage high standards of conduct by all employees.

Beard contends, however, that in the Civil Service Reform Act Congress changed this principle and required the Board itself to determine the applicable penalty. He relies primarily upon 5 U.S.C. § 7701(a) (1982), which permits an employee to "appeal" to the Board from agency actions, and upon section 7701(c)(1)(B), which provides that except in cases based upon unacceptable performance (which this case is not), the "decision of the agency [made after a hearing] shall be sustained ... only if the agency's decision ... is supported by a preponderance of the evidence." He contends that these provisions and the legislative history of the Act reflect a congressional intention to require the Board, in deciding the "appeal" from the agency action, itself to determine independently the appropriate penalty for the violation found.

We discern nothing in either the language or the legislative history of the Act that supports, much less requires, that result. The conclusion that the Board is to review agency penalties under the abuse-of-discretion standard and not itself to determine the appropriate penalty comports with the language and purpose of the Act and is consistent with settled principles of administrative law governing review of agency penalties. Cf. Butz v. Glover Livestock Commission Co., 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); Brewer v. United States Postal Service, 647 F.2d 1093, 227 Ct.Cl. 276 (1981), cert. denied, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).

We frequently have recognized in cases arising under the Civil Service Reform Act that "[d]etermination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency." Hunt v. Department of Health and Human Services, 758 F.2d 608, 611 (Fed. Cir.1985). See also Hayes, 727 F.2d at 1540. Nothing that Beard has presented convinces us that those rulings were wrong or persuades us that we should change them.

The First Circuit dealt with a closely related question in Weiss v. United States Postal Service, 700 F.2d 754, 758 (1st Cir. 1983). There it was contended that the Board was required to review penalty determinations under the preponderance-of-the-evidence standard in section 7701(c)(1)(B) rather than under the abuse-of-discretion standard it had used. In rejecting this contention, the court, after noting the statement in Boyce, quoted above, that penalty determinations were committed to agency discretion, subject to only two limited exemptions, stated:

We see nothing in the Act that suggests that Congress intended to alter that rule. To the contrary, the legislative history of the Act supports our decision that penalty determinations are judgment calls that should be left to the discretion of the employing agency.

700 F.2d at 758. The court concluded that the dual congressional objective reflected in the legislative history of the Civil Service Reform Act

of "increas[ing] the procedural protections afforded employees, while also protecting the right of agencies to be able to maintain the most efficient workforce possible," S.Rep. No. 95–969 at 46; [1978] U.S.Code Cong. & Ad.News at 2768, is well served by applying the preponderance of the evidence standard to the factual determination whether or not the employee committed acts warranting discipline, but leaving to the agency's discretion the judgment of what penalty should be imposed. In that manner, the MSPB, a neutral adjudicative body, determines whether the employee is guilty of the charged conduct, thus guarding against political abuse and safeguarding merit principles. Once the charges are sustained, however, efficient management is served by allowing the agency, within broad limits, to assess the severity of the penalty necessary, for instance, to deter extensive tardiness or absenteeism. To interpret § 7701(c)(1)(B) as does plaintiff would be to go far in the direction of stripping the employing agency of the type of managerial authority Congress

intended it have, for under a preponderance standard, a standard ordinarily used for determining facts, the MSPB, rather than the employing agency, would be the primary decision maker.

*Id.* at 758–59.

This reasoning, with which we agree, is equally applicable to the question before us. It requires rejection of Beard's argument that under the Civil Service Reform Act the Board itself is to determine the appropriate penalty.

■ C. Beard's constitutional contention is that the Board's review of the agency's penalty determination under the abuse-of-discretion standard denied him procedural due process because he did not receive the decision of an impartial decisionmaker to which he was entitled. The basis of this claim is that the same GSA official recommended his removal and determined the penalty and that the Board did not make any independent penalty determination.

The final GSA decision to remove Beard was made by an independent decisionmaker, namely, the Acting Assistant Regional Administrator, who was not the official who initially recommended removal. The initial recommendation to remove Beard was made by Beard's second level supervisor and was concurred in by two other intermediate level agency officials before the matter was presented to the Acting Assistant Regional Administrator for final decision. Beard thus received a decision by an independent decisionmaker on both the facts of his misconduct and the appropriate penalty for that misconduct.

We know of no constitutional requirement that in reviewing an agency penalty determination the Board itself must independently select the penalty. Beard relies on the concurring-in-part and the dissenting-in-part opinion of Justice White and upon the dissenting opinion of Justice Marshall in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Neither of those opinions, however, dealt with the issue before us.

The question in *Arnett* was the constitutionality of the provisions of the Lloyd-LaFollette Act, 5 U.S.C. § 7501 (1970), that permitted the discharge of a nonprobationary employee after giving him notice of the charges and the opportunity to respond, followed by a post-discharge evidentiary hearing. Although there was no opinion for the Court, a majority of the justices upheld the Act against the constitutional challenges. The statements in the concurring and dissenting opinions upon which Beard relies, which were not made in opinions of the Court, do not justify or support Beard's constitutional contentions.

D. Finally, Beard contends that one of the factual determinations upon which the Board sustained the removal—Beard's statement to a superior that he would do the same thing again—is not supported by substantial evidence because Beard made that statement before any charges had been brought against him and he became aware that the agency considered his actions improper.

This contention is irrelevant. The critical point on this aspect of the case is that Beard initially perceived no wrongdoing in what he had done, in violation of agency regulations governing the use of mace. The GSA justifiably characterized Beard's use of the mace as "demonstrat[ing] incredibly poor judgment" in a law enforcement official. Beard's claim that once he learned that the agency considered his conduct improper, he would not repeat it, does not undermine the significance of his original justification of his actions as a factor bearing upon the propriety of the penalty of removal. The significance of the finding that Beard stated immediately after his use of mace that he would do the same thing again is not vitiated by Beard's asserted change of heart after the agency criticized his conduct.

## CONCLUSION

The decision of the Merit Systems Protection Board affirming Beard's removal is affirmed.

AFFIRMED.