# United States Court of Appeals for the Federal Circuit

---

**KATHERINE ARCHULETA, Director,
Office of Personnel Management,**
*Petitioner,*

**v.**

**TONY D. HOPPER,**
*Respondent,*

AND

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2013-3177

---

Petition for review of the Merit Systems Protection Board in No. CH0731090798-I-3.

---

Decided: May 13, 2015

---

ALLISON KIDD-MILLER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for petitioner. With her on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were KAMALA VASAGAM, General

Counsel, KATHIE ANN WHIPPLE, Deputy General Counsel,
STEVEN E. ABOW, Assistant General Counsel and ROBERT
J. GIROUARD, Senior Counsel, Office of Personnel Man-
agement, of Washington, DC.

ANDRES M. GRAJALES, Deputy General Counsel,
AFGE, Office of the General Counsel, of Washington, DC,
argued for respondent Tony D. Hopper. With him on the
brief was DAVID A. BORER.

JEFFREY A. GAUGER, Attorney, Office of the General
Counsel, Merit Systems Protection Board, of Washington,
DC, argued for respondent Merit Systems Protection
Board. With him on the brief was BRYAN G. POLISUK,
General Counsel.

GREGORY O'DUDEN, General Counsel, Larry J. Adkins,
Deputy General Counsel, and PARAS N. SHAH, Assistant
Counsel, National Treasury Employees Union, of Wash-
ington, DC, for amicus curiae.

_____

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Katherine Archuleta, Director of the Office of Person-
nel Management ("OPM"), petitions for review of a final
order of the Merit Systems Protection Board ("the Board")
holding that an individual who meets the definition of an
"employee" under 5 U.S.C. § 7511(a)(1) has a statutory
right to appeal his OPM-directed suitability removal as
an adverse action under 5 U.S.C. chapter 75, subchapter
II. *Hopper v. Office of Pers. Mgmt.*, 118 M.S.P.R. 608
(2012), *aff'g Hopper v. Office of Pers. Mgmt.*, No. CH-0731-
09-0798-I-3, 2012 MSPB LEXIS 1353 (Initial Decision,
Mar. 8, 2012). OPM argues that the Board erred in
approaching this case as an adverse action appeal under
chapter 75 of title 5, rather than as a suitability action

under OPM's regulations. Specifically, OPM argues that the Board improperly expanded its jurisdiction when it held that it can review OPM's suitability actions and can modify the ultimate action taken when OPM has found that an employee is not suitable for federal employment. We previously granted OPM's petition for review under 5 U.S.C. § 7703(d), which allows OPM to seek review of a Board decision when it determines that the Board erred in interpreting a civil service law, rule, or regulation and that the Board's decision will have a substantial impact on the administration of the civil service system. *Kaplan v. Hopper*, 533 F. App'x 997, 999 (Fed. Cir. 2013). Because the statutory language is clear, and because no provision of the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), exempts suitability removals from the Board's jurisdiction under chapter 75, we affirm the Board's decision to review Respondent Tony Hopper's removal as an adverse action appeal, which includes review of the appropriateness of the penalty imposed. We further affirm the Board's decision mitigating Hopper's removal to a letter of reprimand.

BACKGROUND

In April 2008, Tony Hopper ("Hopper") was appointed to the position of Contract Representative with the Social Security Administration ("the SSA") in Florence, Kentucky. The SSA subsequently requested that OPM conduct a background investigation.

Roughly 15 months after his appointment, OPM informed Hopper that it found "a serious question" regarding his suitability for federal employment due to false statements he made in connection with his application and appointment. When asked on his application whether, during the past five years, he had been fired from any job or had quit after being told he would be fired, Hopper responded "no." To the contrary, OPM alleged that Hopper had been fired from a forklift driver position in Octo-

ber 2007, and from a truck driver position with a different company in December 2006. *Initial Decision*, 2012 MSPB LEXIS 1353, at *4. OPM further charged that, in response to a question requesting a list of all employment activities for the past five years, Hopper failed to report his employment in the truck driver position from which he was terminated.

OPM notified Hopper that it would instruct the SSA to remove him based on the charge of "Material, intentional false statement, or deception or fraud in examination or appointment." Hopper responded in writing and submitted supporting documents. He claimed that: (1) he was not fired from either position; and (2) if he failed to report his employment as a truck driver, "it was an honest mistake." Joint Appendix ("J.A.") 145.

In a letter dated July 14, 2009, OPM informed Hopper that it directed the SSA to remove him, to cancel his eligibility for reinstatement, and to debar him from federal employment for three years, or until July 14, 2012. OPM explained that these actions were based on Hopper's failure to report his two prior employment terminations. OPM rejected Hopper's assertions that his resignations were voluntary, citing his employment records and statements from his former employers. OPM advised Hopper that he could appeal its decision to the Board under the appeal rights provided in OPM's suitability regulations: 5 C.F.R. part 731. Pursuant to OPM's directive, the SSA removed Hopper effective July 31, 2009.

Hopper timely appealed OPM's July 14, 2009 negative suitability decision to the Board. While Hopper's appeal was pending, the Board issued a pair of decisions—*Aguzie v. Office of Personnel Management*, 112 M.S.P.R. 276 (2009) and *Barnes v. Office of Personnel Management*, 112 M.S.P.R. 273 (2009)—which questioned whether an individual who meets the definition of an "employee" under 5 U.S.C. § 7511(a)(1) and is separated pursuant to

an OPM suitability action retains a statutory right to appeal his removal as an "adverse action" under 5 U.S.C. chapter 75 subchapter II. *See Aguzie*, 112 M.S.P.R. at 279 ("On remand, the parties shall be provided an opportunity to brief the question of whether the appellant is entitled to appeal his removal under 5 U.S.C. § 7513(d) . . . ."); *see Barnes*, 112 M.S.P.R. at 275 ("[W]e reopen this case to address the question, not raised below or on petition for review, of whether the appellant is entitled to appeal her removal to the Board as an adverse action under 5 U.S.C. chapter 75, subchapter II."). Because Hopper met the definition of an "employee," the administrative judge dismissed his appeal without prejudice to refiling depending upon resolution of the issue in *Aguzie*.

In January 2011, the Board issued its decision in *Aguzie*, holding that, when OPM directs an agency to remove a tenured employee, the removal action is subject to the requirements of chapter 75, including the right to appeal to the Board guaranteed in 5 U.S.C. § 7513(d). *Aguzie v. Office of Pers. Mgmt*, 116 M.S.P.R. 64, 66 (2011). The Board further found that its "statutory jurisdiction extends to review of the other suitability actions on appeal, i.e., debarment and cancellation of eligibilities" on grounds that they were "components of a unitary penalty arising from the same underlying misconduct" as the removal action. *Id*. at 80 (citing *Brewer v. American Battle Monuments Commission*, 779 F.2d 663 (Fed. Cir. 1985) (finding that the Board had jurisdiction to consider a reassignment imposed in connection with a demotion as part of a unified penalty arising out of the same set of circumstances).

Post-*Aguzie*, the administrative judge automatically refiled Hopper's appeal, and conducted a hearing via videoconference on October 26, 2011. During the hearing, representatives for OPM gave an opening statement criticizing the *Aguzie* decision but otherwise refused to participate. Specifically, OPM's representative stated

that: (1) "OPM is simply incapable of adjudicating suitability actions under chapter 75;" and (2) OPM considered suitability factors in connection with this case, but did not consider mitigating or aggravating factors which are relevant under chapter 75. J.A. 461-62. Hopper presented testimony from his second-line supervisor at the SSA: Assistant District Manager Sidney Egleston. In relevant part, Egleston "expressed continued confidence in [Hopper] and testified that he would have issued a lesser penalty, such as a letter of reprimand, rather than impose the penalty of removal." *Hopper*, 118 M.S.P.R. at 610.

In an Initial Decision dated March 8, 2012, the administrative judge explained that, although this case originated as a suitability action, because Hopper qualifies as an employee, he is entitled to appeal his removal as an "adverse action" under chapter 75 pursuant to the Board's decision in *Aguzie*. The administrative judge sustained OPM's charge that Hopper provided false statements during his Federal appointment process. The judge then found that OPM did not engage in harmful procedural error in failing to consider the *Douglas* factors in its suitability action because *Aguzie* changed the applicable standard. *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305 (1981). Even if OPM had considered those factors, however, the administrative judge found that OPM would have made the same decision to direct Hopper's removal. *Initial Decision,* 2012 MSPB LEXIS 1353, at *8-9.

Pursuant to the Board's decision in *Aguzie*, the administrative judge conducted an independent review of the relevant *Douglas* factors. Specifically, the judge noted that Hopper had served 15 months with the SSA, had no prior discipline, and had received a successful rating on his performance review. *Id*. at *10. Given Egleston's unchallenged testimony expressing confidence in Hopper's performance and a preference for a lesser penalty, the

administrative judge mitigated OPM's action from removal to a letter of reprimand.

OPM petitioned the full Board for review, and the Director of OPM intervened. The parties did not dispute any of the administrative judge's factual findings or his conclusion that Hopper failed to demonstrate a harmful procedural error. Importantly, it was undisputed that Hopper was an "employee" under 5 U.S.C. § 7511(a)(1)(B) at the time of his removal due to his status as a preference eligible veteran. Because OPM did not object to any of the administrative judge's factual findings, the Board found no basis to disturb them. OPM focused its arguments on attacking the legal framework set forth in *Aguzie*. The Board found OPM's arguments unpersuasive, and concluded that the administrative judge applied the appropriate analysis to mitigate Hopper's removal.

The Director of OPM petitioned this court to review the Board's final decision pursuant to 5 U.S.C. § 7703(d). In an order dated September 18, 2013, we granted that petition, concluding that OPM "has shown the necessary impact and that our jurisdiction is warranted." *Kaplan v. Hopper*, 533 F. App'x 997, 999 (Fed. Cir. 2013). Accordingly, we have jurisdiction under 5 U.S.C. § 7703(d).

DISCUSSION

On appeal, OPM argues that this court should reverse the Board's decision "upending the long standing and well-established separation between suitability actions by OPM and adverse actions by employing agencies." Petitioner Br. 15. OPM maintains that: (1) Hopper's appeal should have been adjudicated as a suitability action under 5 C.F.R. § 731.501, rather than as an adverse action appeal under chapter 75; and (2) the Board erred in considering and applying mitigating factors to Hopper's suitability appeal. In the alternative, OPM submits that the governing statutes create an ambiguity with respect to whether suitability actions are included within the

definition of a "removal" in 5 U.S.C. § 7512, and thus the Board "should have deferred to OPM's reasonable interpretation of chapter 75 as being inapplicable to suitability actions." Petitioner Br. 16.

The Board responds that the CSRA defines who qualifies as an "employee" for purposes of Board review under chapter 75, and it is undisputed that Hopper meets that definition. And, although the CSRA specifies the types of removals that are excepted from Board review, it does not include an exception for removals based on suitability determinations. Accordingly, the Board maintains that Hopper's removal is an appealable adverse action under chapter 75. Because the statutory text is clear, the Board submits that we need not address OPM's deference arguments. Finally, the Board argues that OPM intentionally failed to meet its burden of showing that the penalty imposed on Hopper was reasonable.

Hopper similarly argues that: (1) the Board's decision is consistent with the CSRA, which places removal appeals within the Board's jurisdiction and contains no exemption for suitability-based removals; and (2) even if there is some ambiguity as to what constitutes a "removal" for purposes of chapter 75, it is the Board's interpretation that is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), not that of OPM.

The scope of our review in an appeal from the Board is limited by statute. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's legal determinations, including its interpretation of a statute, de novo. *McCollum v. Nat'l Credit Union*

*Admin.*, 417 F.3d 1332, 1337 (Fed. Cir. 2005). We review the Board's findings of fact for substantial evidence. *Id.*

As explained below, we agree with the Board that Hopper's removal is an appealable adverse action under chapter 75, which by its terms provides a tenured employee with the right to appeal a removal without any exception for removals based on a negative suitability determination. Because we find the statutory text unambiguous, we do not decide which agency's interpretation of that text is due deference or whether their respective interpretations would be worthy of deference. We further find that the Board applied the appropriate analysis in assessing the penalty and mitigating Hopper's removal to a letter of remand.

A.  The CSRA Grants the Board Jurisdiction Over Removal Appeals Involving Employees

Resolution of this appeal involves the interpretation of and interplay between several provisions of the CSRA on the one hand, and OPM's suitability regulations on the other. It also involves the relationship between OPM and the Board, including their respective roles in the civil service system. It is well established that "statutory construction begins with the language of the statute itself." *Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1148 (Fed. Cir. 1999). "If the statutory language is plain and unambiguous, then it controls, and we may not look to the agency regulation for further guidance." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1320 (Fed. Cir. 2003) (citing *Chevron*, 467 U.S. at 842-43).

Turning to the statutory text, the CSRA grants the Board the power to adjudicate matters falling within its

jurisdiction. 5 U.S.C. § 1204(a).[1] Under the CSRA, "employees"—as defined in 5 U.S.C. § 7511(a)[2]—are entitled to appeal to the Board from: (1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less. 5 U.S.C. § 7512(1)-(5).

---

[1] In relevant part, § 1204(a) provides that the Board shall:

(1) hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under this title, chapter 43 of title 38, or any other law, rule, or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter;

(2) order any Federal agency or employee to comply with any order or decision issued by the Board under the authority granted under paragraph (1) of this subsection and enforce compliance with any such order . . .

5 U.S.C. § 1204(a)(1)-(2).

[2] Under § 7511, an "employee" means: (1) "an individual in the competitive service" who is not serving a probationary or trial period or who has completed 1 year of current continuous service; (2) "a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions;" and (3) "an individual in the excepted service (other than a preference eligible)" who is not serving a probationary or trial period or who has completed 2 years of current continuous service in the same or similar positions. 5 U.S.C. § 7511(a)(1)(A)-(C).

Section 7512 then lists the following actions as falling outside the coverage of the statute:

> (A) a suspension or removal under section 7532 of this title,
>
> (B) a reduction-in-force action under section 3502 of this title,
>
> (C) the reduction in grade of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title if such reduction is to the grade held immediately before becoming a supervisor or manager,
>
> (D) a reduction in grade or removal under section 4303 of this title, or
>
> (E) an action initiated under section 1215 or 7521 of this title.

5 U.S.C. § 7512(A)-(E).

Section 7513(d) of the CSRA provides that an employee who is subject to an action listed in § 7512 is "entitled to appeal to the Merit Systems Protection Board under section 7701." 5 U.S.C. § 7513(d). Section 7701, in turn, grants an employee the right to submit an appeal to the Board of "any action which is appealable to the Board under any law, rule, or regulation," and provides that "appeals shall be processed in accordance with regulations prescribed by the Board." 5 U.S.C. § 7701(a).

Taken together, these statutory provisions make clear that tenured employees—those individuals who meet the definition of an "employee" set forth in § 7511—can seek Board review of adverse actions as defined in § 7512, including removals. Nothing in the text of the CSRA

excludes suitability-based removals from the coverage of chapter 75. In fact, when Congress delineated the types of actions that are outside the scope of § 7512, it did not include an exemption for suitability removals. Applying the canon of *expressio unius est exclusio alterius*, no exceptions should be read into § 7512 beyond the five that Congress specifically created. *See United States v. Smith,* 499 U.S. 160, 167 (1991) ("'Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'") (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)); *see also Ventas, Inc. v. United States*, 381 F.3d 1156, 1161 (Fed. Cir. 2004) ("Where Congress includes certain exceptions in a statute, the maxim *expressio unius est exclusio alterius* presumes that those are the only exceptions Congress intended."). Accordingly, we can infer that suitability-based removals are included within the scope of § 7512.

Here, it is undisputed that Hopper qualifies as an "employee" because he is a preference eligible veteran in the excepted service who has completed 1 year of current continuous service in the same or similar position. *See* 5 U.S.C. § 7511(a)(1)(B). It is also undisputed that Hopper was removed from his position with the SSA. OPM argues, however, that a removal is not a "removal" within the meaning of chapter 75 when it is based on a suitability determination. OPM fails to cite a single statutory provision supporting this position. Instead, OPM points to general statutory grants of authority and to its own regulations. As explained below: (1) none of the statutes upon which OPM relies exempts suitability-based removals from the Board's jurisdiction under chapter 75; and (2) OPM's regulations cannot override the unambiguous language of § 7512.

OPM maintains that the CSRA preserved OPM's pre-CSRA control over suitability matters. Specifically, OPM

cites 5 U.S.C. §§ 1101, 1103, and 1104 for the proposition that Congress intended OPM to have control over suitability actions and that it recognized a distinction between suitability actions and adverse actions taken by employing agencies. None of these provisions supports OPM's position, however.

First, Section 1101 provides that OPM "is an independent establishment in the executive branch." 5 U.S.C. § 1101. Section 1103 establishes the functions of the Director of OPM and provides, in relevant part, that the Director shall be responsible for "executing, administering, and enforcing" the civil service rules and regulations and other activities of the office, "<u>except with respect to functions for which the Merit Systems Protection Board or the Special Counsel is primarily responsible</u>." 5 U.S.C. § 1103(a)(5) (emphasis added). Likewise, § 1104 provides that the Director has authority to "prescribe regulations and to ensure compliance with the civil service laws, rules, and regulations." 5 U.S.C. § 1104(b)(3). OPM cites several additional statutes which give it the general authority to prescribe regulations for the admission of applicants into the civil service.[3]

While these authorities stand for the proposition that OPM can promulgate suitability regulations, they do not alter the Board's statutory jurisdiction to adjudicate

---

[3] *See* 5 U.S.C. § 1302(a) (providing that OPM "shall prescribe regulations for, control, supervise, and preserve the records of, examinations for the competitive service"); 5 U.S.C. § 3301(a) (stating that the President may "prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service"); 5 U.S.C. § 3302 (stating that the President "may prescribe rules governing the competitive service" and the rules shall provide for "necessary exceptions of positions").

removal appeals. Indeed, § 7514 grants OPM authority to prescribe regulations "except as it concerns any matter with respect to which the Merit Systems Protection Board may prescribe regulations." 5 U.S.C. § 7514. The CSRA specifically provides that removals are adverse actions appealable to the Board, and we decline OPM's invitation to rewrite the statute to add suitability removals to the list of those matters not subject to appeal in § 7512.

Despite the unambiguous statutory text, OPM argues that its regulations at 5 C.F.R. §§ 731.203(f) and 752.401(b)(10), which purport to exclude suitability actions from coverage under chapter 75, are controlling.[4] OPM cannot introduce ambiguity into the statute through its regulations, however. *See Van Wersch*, 197 F.3d at 1148 ("If the language is clear, the plain meaning of the statute will be regarded as conclusive."). Indeed, Congress made clear that it did not intend for OPM to have that authority. *See* S. Rep. No. 95-969, at 51 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2773 ("OPM does not have authority, however, to issue regulations which would undermine the authority of the Board directly or indirectly to regulate the procedures under which it reviews matters appealed to it, or the authority of the Board to decide matters in accordance with its interpretation of applicable law.").

OPM submits that its regulations are valid under the savings provision of the CSRA, § 902(a). Specifically, OPM maintains that § 902(a) preserved a "distinction between suitability actions and adverse actions by em-

---

[4] 5 C.F.R. § 731.203(f) provides that "an action to remove . . . an employee for suitability reasons under . . . part 731 is not an action under part 752," which includes chapter 75. 5 C.F.R. § 752.401(b)(10) similarly provides that part 752 procedures do not apply to actions "taken or directed by [OPM] under part 731 . . . of this chapter."

ploying agencies." Petitioner Br. 22. OPM's reliance on the savings provision is misplaced. That provision states, in part, that, "[e]xcept as otherwise provided in this Act, all executive orders, rules, and regulations affecting the Federal service shall continue in effect, according to their terms, until modified, terminated, superseded, or repealed" by the President or OPM. CSRA § 902(a), 92 Stat. at 1223.

As an initial matter, because OPM modified its regulations after the CSRA was enacted, it can no longer rely on the savings provision which specifically states that preexisting rules shall continue in effect "until modified." More importantly, however, § 902(a) demonstrates that, although certain rules may have been preserved, no rules that conflict with the CSRA survive under the Act. Accordingly, to the extent OPM alleges that its suitability action appeal rules were part of the pre-CSRA scheme, they were not preserved under the savings provision because they are inconsistent with § 7512.

OPM contends that § 7512 is, at best, ambiguous as to whether OPM-directed suitability actions are included within the definition of a "removal." It maintains, however, that the term "removal" does not include debarment or cancellation of eligibilities. The Board cited *Aguzie* for the proposition that its statutory jurisdiction extends to review such actions taken in connection with a removal because they are "components of a unitary penalty arising from the same underlying misconduct." *Hopper*, 118 M.S.P.R. at 612 (citing *Aguzie*, 116 M.S.P.R. at 80). We agree. Indeed, this court has recognized that the Board has jurisdiction to review a "unitary penalty" arising out of the same set of circumstances. *See Brewer*, 779 F.2d at 664-65 (finding that the Board had jurisdiction to review a reassignment because it was imposed in connection with a demotion).

OPM argues that the "unitary penalty" principle does not apply here because removal is backward-looking while debarment and cancellation of eligibilities are forward-looking and designed to ensure that an individual cannot return to Federal service for a specified period of time. As the Board noted in *Aguzie*, however, our decision in *Brewer* did not focus on whether the penalties imposed served the same purpose, but rather on the fact that they arose "out of the same set of circumstances of which Mr. Brewer was found culpable." *Aguzie*, 116 M.S.P.R. at 80-81 (quoting *Brewer*, 779 F.2d at 664). Here, the debarment and cancellation of eligibilities are a unified penalty arising out of the same set of facts as Hopper's removal. As Hopper points out, moreover, in the case of an employee, debarment and cancellation of eligibilities "cannot exist in isolation from the appealable, directed action" because an "individual cannot simultaneously be an employee, on the one hand, and debarred from seeking employment with the government, on the other." Hopper Br. 23-24.

OPM also argues that § 7512 is ambiguous because, "by its plain terms," it "does not cover all removals." Petitioner Br. 28. But the statute provides that it applies to "a removal" and then lists specific exceptions. That there is no exception for suitability-based removals does not render the statute ambiguous. Instead, it supports the inference that Congress did not intend to create such an exception. This is especially true given that the language used in § 7512 is not open ended, and does not invite additional exceptions. *See Smith*, 499 U.S. at 167 ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied . . . .").

OPM also cites *Horner v. Andrzjewski*, 811 F.2d 571 (Fed. Cir. 1987), for the broad proposition that § 7512 is ambiguous. At issue in *Horner* was an OPM regulation which exempted emergency furloughs from the statutory

thirty day notice requirement for adverse actions. The Board found the regulation invalid on grounds that: (1) § 7512 defines a furlough of thirty days or less as an adverse action; and (2) § 7513(b) requires thirty days advance written notice for any adverse action. *Id.* at 574. On appeal, this court concluded that there was an ambiguity in the statute and that OPM's regulation "merely resolve[d] that ambiguity." *Id.* at 576. We explained that, "[i]f an emergency furlough action is taken because an agency has no choice, rather than for the 'efficiency of the service' . . . it can reasonably be said that the agency did not 'take an action' covered by chapter 75. Thus, the notice provision of section 7513(b) would be inapplicable." *Id.* at 576. Unlike the emergency furlough at issue in *Horner*, however, a removal *is* an adverse action under § 7512, and it is undisputed that the SSA removed Hopper. Accordingly, *Horner* is readily distinguishable.

The Board concedes that "OPM can direct a suitability-based removal action after an employee has been on the job for 10, 15, or even 30 years." Respondent MSPB Br. 24. That said, a tenured employee has a statutory right to Board review of that removal under chapter 75. OPM cites *Folio v. Department of Homeland Security*, 402 F.3d 1350, 1355 (Fed. Cir. 2005), as evidence that this court "has held that OPM's regulations properly prevent the board from reviewing its suitability actions." Petitioner Br. 17. *Folio* did not involve a tenured employee with chapter 75 appeal rights, however. Instead, it involved a job applicant whose tentative offer for employment was rescinded following a background check. *Folio*, 402 F.3d at 1355. Because Folio was not an employee, he was not entitled to appeal to the Board pursuant to 5 U.S.C. § 7513(d). Nor was the agency's withdrawal of his tentative offer of employment an action covered by 5 U.S.C. § 7512. Folio's only avenue of appeal to the Board was provided under 5 C.F.R. § 731.501, which states that the Board may consider all aspects of a suitability deter-

mination, but may not review or modify the actions taken pursuant to that determination. Because Hopper is a tenured employee, the court's analysis in *Folio* does not apply.

According to OPM, its suitability regulations do not treat tenured employees differently because "mere completion of 12 months of service cannot shield a person from the consequences of, for example, making material, intentional false statements in order to obtain a position with the Federal Government." Petitioner Br. 32 (citing 73 Fed. Reg. 20149, 20151 (Apr. 15, 2008)). OPM maintains that the Board's decision creates an inconsistency wherein the Board cannot review or mitigate OPM's selected suitability action in cases involving individuals without chapter 75 appeal rights, but where the individual qualifies as an "employee," the Board can substitute its judgment for that of OPM.

While OPM strongly urges that its authority should not be circumscribed, it is not irrational to think Congress intended to do just that; giving broad authority to OPM unless and until an individual attains "employee" status. To the extent OPM believes that § 7512 should include an exception for actions taken against tenured employees based on suitability determinations, it must make its case to Congress rather than this court. If Congress determines that an individual in Hopper's position should not have the right to appeal a negative suitability decision as an adverse action under chapter 75, it can amend the CSRA to include suitability actions in the list of those matters not subject to appeal. *See Reid v. Dep't of Commerce*, 793 F.2d 277, 284 (Fed. Cir. 1986) ("'The remedy for any dissatisfaction with the results in particular cases lies with Congress' and not this court. 'Congress may amend the statute; we may not.'" (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576 (1982)). Until it does so, however, we must apply the statute as written. *See Van Wersch*, 197 F.3d at 1152 ("[W]hen a

statute expresses its purpose in short, clear terms, the duty of the court is to apply the statute as written.") (citation omitted).[5]

## B.  Mitigation of the Penalty

Because Hopper is a tenured employee, he has a statutory right to appeal his removal to the Board under 5 U.S.C. § 7513(d).  It is well established that the Board's jurisdiction under § 7513(d) includes the authority to review the agency's penalty determination using the factors articulated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981).  *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 5 (2001) (noting that "the agency bears the burden of proving its charge by a preponderance of the evidence" and that, "[u]nder the Board's settled procedures, this requires proving not only that the misconduct actually occurred, but also that the penalty assessed was reasonable in relation to it") (citing *Douglas*, 5 M.S.P.R. at 304-05).

---

[5]  To the extent OPM's regulations at 5 C.F.R. §§ 731.203(f) and 752.401(b)(10) are inconsistent with the Board's statutory obligation to adjudicate appeals under § 7513(d), they are invalid.  *See Van Wersch*, 197 F.3d at 1151 n.7 ("By the same token, to the extent that OPM's regulations are contrary to the proposition that an individual is an 'employee' if he or she meets the requirements of either 5 U.S.C. § 7511(a)(1)(C)(i) or (ii), they are invalid."); *see also Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981) ("[T]he courts are the final authorities on issues of statutory construction.  They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.").

OPM objects to the Board's application of chapter 75 to Hopper's case, and argues that the *Douglas* factors do not apply in suitability appeals. According to OPM, pursuant to 5 C.F.R. § 731.501 and this court's decision in *Folio*, the Board "may consider all aspects of a suitability determination, *except* the actions taken pursuant to it." Petitioner Br. 17 (citing *Folio*, 402 F.3d at 1355); *see also* 5 C.F.R. § 731.501(b)(1) ("If the Board finds that one or more of the charges brought by OPM or an agency against the person is supported by a preponderance of the evidence . . . it must affirm the suitability determination. The Board must consider the record as a whole and make a finding on each charge and specification in making its decision."). OPM maintains that: (1) no penalty mitigation factors can offset the fact that Hopper falsified documents in connection with his appointment; (2) when an employee is found unsuitable for federal employment, "removal *must* be part of the outcome;" and (3) the Board erred when it held that, "unlike penalty selections by employing agencies, OPM's selection of a suitability action is not entitled to any deference." Petitioner Br. 35.

While it is certainly true that "obtaining an appointment through material misrepresentation is a very serious offense" that may form the basis for removal, we have said that it "involves a quantum leap of logic" to conclude that review of the penalty is somehow barred. *Devine v. Sutermeister*, 724 F.2d 1558, 1564 (Fed. Cir. 1983). Instead, Hopper is entitled to "the same procedural safeguards and review as any other employee subject to an adverse action under the CSRA, including review of the appropriateness of the penalty imposed by the agency." *See id.*

"'Determination of an appropriate penalty is a matter committed primarily to the sound discretion of the employing agency.'" *Brook v. Corrado*, 999 F.2d 523, 528 (Fed. Cir. 1993) (quoting *Beard v. Gen. Servs. Admin.*, 801 F.2d 1318, 1322 (Fed. Cir. 1986)). This court defers to the

agency's choice of penalty "unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Id.* (citation and quotation marks omitted). We have explained that this principle of deference "reflects the important policy consideration that the employing (and not the reviewing) agency is in the best position to judge the impact of the employee misconduct upon the operations of the agency . . . ." *Beard*, 801 F.2d at 1321.

Consistent with that rationale, the Board in *Aguzie* found that deference is not warranted "when OPM, rather than the employing agency, makes the penalty determination." 116 M.S.P.R. at 80 (noting that the "factors pertinent to determining the appropriateness of the penalty under the efficiency of the service standard of 5 U.S.C. § 7513(a) are not limited to the factors OPM may consider under 5 C.F.R. § 731.203(c), but may also include matters which the employing agency is in a better position to evaluate"). Because the employing agency is better positioned to evaluate the relevant *Douglas* factors, including "the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence," we agree. *See id.* Accordingly, in an appeal of an OPM-directed suitability removal of a tenured employee, the Board must review the penalty in light of the relevant *Douglas* factors. *See id.* In these circumstances, OPM, as the deciding agency, bears the burden to persuade the Board of the appropriateness of the penalty imposed. *Id.*; *see also Douglas*, 5 M.S.P.R. at 307 ("[T]he ultimate burden is upon the agency to persuade the Board of the appropriateness of the penalty imposed").

As previously noted, the administrative judge sustained OPM's falsification charge against Hopper, but mitigated the penalty after applying the relevant *Douglas*

factors. In doing so, the administrative judge noted that OPM was present at the hearing, but refused to participate beyond challenging the decision in *Aguzie*. Accordingly, OPM did not provide any testimony or other evidence in support of its removal decision.

Independently applying the relevant *Douglas* factors, the administrative judge found that Hopper served 15 months with the SSA, had no prior discipline, and had received a successful performance review. Given that Hopper's second-line supervisor expressed continued confidence in him and a preference for a lesser penalty, the administrative judge found that mitigation was appropriate. The Board found that the administrative judge applied the appropriate analysis in mitigating Hopper's removal and affirmed the administrative judge's findings.

We discern no error in the Board's analysis. Because Hopper was a tenured employee, he was entitled to appeal to the Board under Section 7513(d), and the Board had jurisdiction to assess whether the penalty was appropriate. Where, as here, OPM presents no evidence to support the reasonableness of the penalty, we have no alternative but to accept the Board's assessment of it. We therefore find no error in the Board's decision that it had the authority to mitigate Hopper's suitability removal to a letter of reprimand.

## CONCLUSION

For the foregoing reasons, we conclude that: (1) under the CSRA, a tenured employee is entitled to appeal a suitability-based removal as an adverse action under chapter 75; and (2) the Board was entitled to conduct an independent review of the penalty imposed in light of the relevant *Douglas* factors. Accordingly, we affirm the Board's decision mitigating Hopper's suitability-based removal to a letter of reprimand.

**AFFIRMED**