Plager, Circuit Judge, with whom Linn, Circuit Judge, -joins, dissenting. The majority opinion, recognizing that there is no statute directly on point, engages us in an exhaustive parsing of statutes and legislative history in an effort to infer the “right” answer. But this,case is not about the history and construction of tangential statutory enactments. Over the years the judges of this court have had to deal with the myriad of statutes applicable to federal government employees and their rights under tHe law. Anyone who does this knows' that the statutory structure governing federal personnel that has'emerged after years of Congressional additions' and amendments is a structure riddled with inconsistencies and puzzling provisions.[1] Sometimes, parsing the variety of statutes that could be invoked as applicable to a particular personnel problem is akin to predicting divine will by studying animal entrails, as was done by the Etruscans and Romans. In that connection, it has been remarked that, “while ‘answers’ of some sort will be found if one insists on finding them, many will view the process as unedifying.”[2] My colleague, Judge Linn, in his dissent which I join, nicely shows how such parsing can support the exact opposite conclusion than that reached by the majority. An alternative approach in this case is to address what Mr. Parkinson’s case is fundamentally about, and what the fair and just result should be. It is true that, as an initial proposition, an agent of the Federal Bureau of Investigation (“FBI”) who thinks he or she is being treated unfairly because they blew the whistle on some illegal conduct by other FBI agents, including administrative superiors in the agency, is entitled to have their case decided by—the FBI.[3] Through the mechanism created under the authority of 5 U.S.C. § 2303, an initial claim by an FBI agent that an earlier whistleblower report has now led to retaliatory action will be heard by officers in the FBI agency, the same agency against whom the employee is complaining. And the final’merits of the agent’s complaint will be determined by those same officers, without any further review in a court or elsewhere. In short, the FBI agency is both defendant and judge of the employee’s whistleblower claim of unfair treatment. Some observers might argue that, even if well intentioned in order to limit public disclosure of FBI methods, such a system is an offense to basic principles of due process and governmental authority toward people whose only sin may be that they have chosen to work for the Government. But that is not the problem we are here called upon to address. Congress created an alternative route for certain preference-eligible employees, of which Mr, Parkinson is one. In the case of certain veterans who are employed by the FBI, designated preference-eligible employees, Congress gave such employees an opportunity to have their complaints heard by--a neutral third party, specifically the Merit System Protection Board (“MSPB”).[4] The MSPB, created as part of the 1978 overhaul of the federal employment system, was designed to focus the system on merit principles. It is “responsible for safeguarding the effective-.operation of the merit principles in practice.”[5] The MSPB is the arbiter of employee complaints against an agency employer who has taken what the statutes call an “adverse action”; dismissal from the agency is such an action.[6] Among these merit principles, set out in 5 U.S.C. § 2301, is a general statement about federal employment in subsection (b)(2): _ ( All employees ... should receive fair and equitable treatment in all aspects of personnel managemeñt without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights. More to the point here, subsection (b)(9) specifically provides: Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences—(A) a violation of any law, rule, or regulation, or (B) mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety- The special protections under subsection (b)(9) have been provided for whistleblow-ers, employees who report bad conduct on the part of other employees, and are sometimes singled out for retaliatory treatment by agency officialdom. As § 2301 evidences, the MSPB has an important role to play when an employee alleges a retaliatory dismissal following a whistleblowing action, as was the case of Mr. Parkinson. So Mr. Parkinson took his case to the MSPB. He had been removed from his job. He tried to tell the MSPB that his firing was not because of anything he did wrong, but was in retaliation for his being a whis-tleblower. Specifically, he had reported to his chain of command, including FBI Assistant Special Agent in Charge, Gregory Cox, that two pilots—who were part of the special operations group under Mr. Parkinson’s leadership—had engaged in misconduct. He alleged that the two pilots, inter alia, misused FBI aircraft to solicit prostitutes, committed time and attendance fraud, used FBI computers to view pornography, and destroyed equipment. Such alleged activities would seem fairly contrary to the merit system’s principles, or any other measure of proper federal employee behavior. Prior to being removed, but after making his protected whistleblower disclosures, Mr. Parkinson was demoted from his special operations group leadership role, issued a low performance rating, and reassigned to a different field office. Among those involved in taking these actions against Mr. Parkinson was Assistant Special Agent in Charge Mr. Cox—the same FBI employee who was the recipient of Mr. Parkinson’s earlier whistleblower disclosures. Later, Mr. Cox and the FBI’s Sacramento Office began the process that resulted in Mr. Parkinson’s ultimate removal—an action that all three judges in the initial panel decision of this court determined could not be sustained on the grounds presented.[7] That panel decision resulted in this en banc review. The MSPB heard Mr. Parkinson’s appeal from his dismissal, but ruled he could not present his affirmative defense that the dismissal was in retaliation for his whistleblowing activity. Not surprisingly, the Government’s essentially uncontested allegations led the MSPB to affirm his dismissal. The explanation this en banc court, and to some extent the MSPB, gives is that a claim of whistleblowing by FBI agents under the relevant statutes goes exclusively to the FBI for resolution. But this case does not involve a claim of whistleblowing in the first instance. It involves whether a preference-eligible FBI agent, pursuant to a special statutory right to take an appeal from an agency dismissal to the MSPB, can defend against the Government’s argument for dismissal by providing evidence of a retaliatory government motive. The Government alleges that, because of the employee’s conduct in office, the dismissal is proper. The counter is to show a neutral decider that what he really did was to blow the whistle on the FBI’s activities, and that is why they are punishing him—a prohibited retaliatory action.[8] This is what is known in the law as an affirmative defense.[9] And in what to me is an inexplicable decision, this court holds that his right to appeal his dismissal to the MSPB does not include the right to defend himself on the one ground that, under normal circumstances, if true, would vitiate the agency’s adverse action against him. This is particularly odd because the MSPB in considering permissible penalties for wrongdoing may consider whistleblowing as a mitigating factor. See Archuleta v. Hopper, 786 F.3d 1340, 1352-53 (Fed. Cir. 2015) (en banc); Douglas v. Veterans Admin., 5 M.S.P.B. 313, 331-33, 5 M.S.P.R. 280 (1981). No amount of parsing of tangential statutes and regulatory provisions can justify a basic denial of the right to make one’s best case to the designated arbiter of one’s fate. See U.S. Const, amend. V (“No person ... shall be deprived of life, liberty, or property, without due process of law....”). See also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985): “The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to ... an opportunity to present his side of the story.” If this case is not a denial of due process by the Government, I am hard pressed to imagine one. Congress gave Mr. Parkinson an exemption from the ‘usual’ FBI whistle-blower/adverse action rules and gave him a hearing before the MSPB. That hearing must be conducted in a fair and proper way under our Constitution. A right to present what may prove to be a valid affirmative defense is clearly included. Equally importantly, if the MSPB fails in its duty to provide a fair and proper hearing, the law gives him a right to appeal to this court for correction. Both we and the MSPB have failed in our duty. I respectfully dissent. . The Supreme Court, in a case regarding the statutes governing ‘mixed case’ appeals before the MSPB, once observed that it is "a complicated, at times confusing, process.” Kloeckner v. Solis, 568 U.S. 41, 49, 133 S.Ct. 596, 184 L.Ed.2d 433 (2012). . See Saikrishna Bangalore Prakash, Imperial from the Beginning: The Constitution of the Original Executive 6 (Yale Univ. Press 2015). . The admittedly ungrammatical "they/their” usage is to avoid repetition of the he/she phrasing. . Even before the creation of the MSPB, Congress carved out. a statutory right solely for veterans to appeal an adverse personnel action to the Civil Service Commission. See 5 U.S.C. § 7701 (1976). . S. Rep. No. 95-969, at 6, U.S. Code Cong. & Admin. News 1978, p. 2728. . See 5 U.S.C. §§ 7512(1), 7513(d); see also 5 U.S.C. § 7511(a)(1)(B) and (b)(8) (concerning FBI preference eligibles). . See Parkinson v. Dep't of Justice, 815 F.3d 757, 776 (Fed. Cir. 2016), vacated by 691 Fed.Appx. 909 (Fed. Cir. 2016) (per curiam order granting petition for rehearing en banc). . It is not surprising to be told that the FBI takes its time and, in many cases, concludes that the allegations of misconduct by FBI authorities—casting a disparaging light on the agency—are unjustified. See, e.g., En Banc Brief of Amici Curiae National Whistleblower Center et al. in Support of Petitioner at 1-8, 16-17; GAO Report 15-112, "Whistleblower Protection, Additional Actions Needed to Improve DOJ’s Handling of FBI Retaliation Complaints” (Jan. 2015). . See, e.g., Affirmative Defense, under Defense, Black’s Law Dictionary (10th ed. 2014) ("A defendant’s assertion of facts and arguments that, if true, will defeat the plaintiff’s or prosecution's claim, even if all the allegations in the complaint are true.... Also termed plea in avoidance; plea in justification. Cf negative defense; confession and avoidance.”).